UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

ROBERT G. LOPEZ,

           Plaintiff,

        v.

THE GAP INC., GAP INTERNATIONAL
SOURCING, INC., OLD NAVY, LLC and
OLD NAVY APPAREL, LLC,

           Defendants.

NO. 11 CV 3185 (PAE)

---

## MEMORANDUM OF LAW IN SUPPORT OF
## DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

### PUBLIC VERSION

James D. Weinberger (*jweinberger@fzlz.com*)
Anna P. Leipsic (*aleipsic@fzlz.com*)
FROSS ZELNICK LEHRMAN & ZISSU, P.C.
866 United Nations Plaza
New York, NY 10017
Tel: (212) 813-5900
Fax: (212) 813-5901

*Counsel for Defendants*

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ......................................................................................... ii

PRELIMINARY STATEMENT ..................................................................................1

STATEMENT OF UNDISPUTED FACTS .................................................................2

    A.  Plaintiff's Clothing Business ........................................................................2

    B.  Plaintiff's Alleged Trademarks......................................................................6

    C.  Plaintiff's Efforts To Enforce His Alleged Rights in the Alleged Marks............................6

    D.  The Allegedly Infringing OLD NAVY T-Shirts ...........................................8

    E.  Procedural History ........................................................................................9

STANDARD OF LAW ...............................................................................................10

ARGUMENT...............................................................................................................10

I.   THE ALLEGED MARKS ARE NOT PROTECTABLE
    BECAUSE THEY ARE GEOGRAPHICALLY DESCRIPTIVE
    AND LACK SECONDARY MEANING ...............................................................11

    A.  The Alleged Marks Are Geographically Descriptive ......................................12

    B.  The Alleged Marks Do Not Have Secondary Meaning ...................................14

II.  PLAINTIFF HAS NOT PRODUCED SUFFICIENT
    PROOF OF USE OF THE ALLEGED MARKS ..................................................17

III. THERE IS NO GENUINE ISSUE OF MATERIAL
    FACT AS TO LIKELIHOOD OF CONFUSION ..................................................18

IV. DEFENDANTS' USE OF "LOWER EAST SIDE" AND "LES"
    TO REFER TO THE LOWER EAST SIDE NEIGHBORHOOD
    OF NEW YORK CITY CONSTITUTES FAIR USE.............................................24

CONCLUSION............................................................................................................25

# TABLE OF AUTHORITIES

## CASES

*Abercrombie & Fitch Co. v. Hunting World, Inc.*,
   537 F.2d 4 (2d Cir. 1976) ...................................................................................................11

*Anderson v. Liberty Lobby, Inc.*,
   477 U.S. 242 (1986)...........................................................................................................10

*Arrow Fastener Co. v. Stanley Works*,
   59 F.3d 384 (2d Cir. 1995) ................................................................................................22

*Bank of Texas v. Commerce Southwest, Inc.*,
   741 F.2d 785 (5th Cir. 1984) .............................................................................................12

*Bernard v. Commerce Drug Co.*,
   964 F.2d 1338 (2d Cir. 1992) .......................................................................................13, 17

*Black & Decker Corp. v. Dunsford*,
   944 F. Supp. 220 (S.D.N.Y. 1996) .................................................................................15, 16

*Bristol-Myers Squibb Co. v. McNeil-P.P.C., Inc.*,
   973 F.2d 1033 (2d Cir. 1992) ............................................................................................14

*Burke-Parsons-Bowlby Corp. v. Appalachian Log Homes, Inc.*,
   871 F.2d 590 (6th Cir. 1989) .............................................................................................13

*Caldarola v. Calabrese*,
   298 F.3d 156 (2d Cir. 2002) ..............................................................................................10

*Car-Freshner Corp. v. S.C. Johnson & Son, Inc.*,
   70 F.3d 267 (2d Cir. 1995) ................................................................................................25

*Celotex Corp. v. Catrett*,
   477 U.S. 317 (1986)...........................................................................................................10

*Centaur Communications, Ltd. v. A/S/M Communications, Inc.*,
   830 F.2d 1217 (2d Cir. 1987) ..................................................................................14, 19, 23

*Chrysler Group L.L.C. v. Moda Group L.L.C.*,
   796 F. Supp. 2d 866 (E.D. Mich. 2011) ..............................................................................12

*Cosmetically Sealed Industries, Inc. v. Chesebrough-Pond's USA Co.*,
   125 F.3d 28 (2d Cir. 1997) ............................................................................................24, 25

*Dalton Enterprises, Inc. v. Copeland Coating Co.*,
   No. 90 Civ. 320, 1991 WL 117698 (N.D.N.Y. June 18, 1991)...............................................11

*De Beers LV Trademark Ltd. v. DeBeers Diamond Syndicate, Inc.*,
   440 F. Supp. 2d 249 (S.D.N.Y. 2006) .............................................................................19, 22

*Deere & Co. v. MTD Products, Inc.*,
   41 F.3d 39 (2d Cir. 1994) ...................................................................................................20

*Dessert Beauty, Inc. v. Fox*,
   568 F. Supp. 2d 416 (S.D.N.Y. 2008) ..........................................................................24, 25

*Dessert Beauty, Inc. v. Fox*,
   329 F. App'x 333 (2d Cir. 2009) .....................................................................................24

*EMI Catalogue Partnership v. Hill, Holliday, Connors, Cosmopulos Inc.*,
   228 F.3d 56 (2d Cir. 2000) .............................................................................................24, 25

*ESPN, Inc. v. Quiksilver, Inc.*,
   586 F. Supp. 2d 219 (S.D.N.Y. 2008) .............................................................................23

*Forschner Group, Inc. v. Arrow Trading Co.*,
   30 F.3d 348 (2d Cir. 1994) .............................................................................................12

*Gameologist Group, L.L.C. v. Scientific Games International, Inc.*,
   No. 09 Civ. 6261(JGK), 2011 WL 5075224 (S.D.N.Y. Oct. 25, 2011) ...........................*passim*

*Genesee Brewing Co., Inc. v. Stroh Brewing Co.*,
   124 F.3d 137 (2d Cir. 1997) ...........................................................................................23

*Glow Industries, Inc. v. Lopez*,
   252 F. Supp. 2d 962 (C.D. Cal. 2002) ........................................................................17, 18

*Greenpoint Financial Corp. v. The Sperry & Hutchinson Co.*,
   116 F. Supp. 2d 405 (S.D.N.Y. 2000) ...........................................................................*passim*

*Gruner + Jahr USA Publishing v. Meredith Corp.*,
   991 F.2d 1072 (2d Cir. 1993) .........................................................................................23

*Hormel Foods Corp. v. Jim Henson Products, Inc.*,
   73 F.3d 497 (2d Cir. 1996) .............................................................................................23

*Housing & Services, Inc. v. Minton*,
   No. 97 Civ. 2725, 1997 WL 349949 (S.D.N.Y. June 24, 1997)........................................18

*Information Superhighway, Inc. v. Talk America, Inc.*,
   395 F. Supp. 2d 44 (S.D.N.Y. 2005) ...............................................................................17

*International Healthcare Exchange, Inc. v. Global Healthcare Exchange, L.L.C.*,
   470 F. Supp. 2d 365 (S.D.N.Y. 2007) .............................................................................17

*Jewelers of America, Inc. v. Amirghanyan*,
   115 F.R.D. 274 (S.D.N.Y. 1987)....................................................................................12

*Jewish Sephardic Yellow Pages, Ltd. v. DAG Media, Inc.*,
   478 F. Supp. 2d 340 (E.D.N.Y. 2007) ..........................................................................15, 16

*KP Permanent Make-Up, Inc. v. Lasting Impression I, Inc.*,
   543 U.S. 111 (2004).........................................................................................................24

*Kelly-Brown v. Winfrey,*
   No. 11 Civ. 7875(PAC), 2012 WL 701262 (S.D.N.Y. Mar. 6, 2012) ...............................24, 25

*Lang v. Retirement Living Publishing Co.,*
   949 F.2d 576 (2d Cir. 1991) ...........................................................................................................20

*Lemme v. National Broadcasting Co.,*
   472 F. Supp. 2d 433 (E.D.N.Y. 2007) ..........................................................................................12

*LoPresti v. Terwilliger,*
   126 F.3d 34 (2d Cir. 1997) ...........................................................................................................23

*Louis Vuitton Malletier v. Burlington Coat Factory Warehouse Corp.,*
   426 F.3d 532 (2d Cir. 2005) .................................................................................................. 19-20

*Major League Baseball Properties, Inc. v. Opening Day Products, Inc.,*
   385 F. Supp. 2d 256 (S.D.N.Y. 2005) ....................................................................... 18, 20, 22

*McGregor–Doniger Inc. v. Drizzle, Inc.,*
   599 F.2d 1126 (2d Cir. 1979) .......................................................................................................23

*Morningside Group Ltd. v. Morningside Capital Group, L.L.C.,*
   182 F.3d 133 (2d Cir. 1999) .............................................................................................11, 21, 22

*New York Mercantile Exchange, Inc. v. IntercontinentalExchange, Inc.,*
   389 F. Supp. 2d 527 (S.D.N.Y. 2005) ..........................................................................................24

*Nabisco, Inc. v. Warner-Lambert Co.,*
   220 F.3d 43 (2d Cir. 2000) ...........................................................................................................20

*Old Republic National Title Insurance Co. v. Luft,*
   859 N.Y.S.2d 261 (N.Y. App. Div. 2008) ....................................................................................23

*Paper-Cutter, Inc. v. Fay's Drug Co.,*
   900 F.2d 558 (2d Cir. 1990) .........................................................................................................14

*Polaroid Corp. v. Polarad Electronics, Corp.,*
   287 F.2d 492 (2d Cir. 1961) .........................................................................................................19

*Ralston Purina Co. v. Thomas J. Lipton, Inc.,*
   341 F. Supp. 129 (S.D.N.Y. 1972) ...............................................................................................14

*Simon & Schuster, Inc. v. Dove Audio, Inc.,*
   970 F. Supp. 279 (S.D.N.Y. 1997) .......................................................................................11, 12

*Starbucks Corp. v. Wolfe's Borough Coffee, Inc.,*
   588 F.3d 97 (2d Cir. 2009) ...........................................................................................................22

*Sterling Drug, Inc. v. Bayer AG,*
   14 F.3d 733 (2d Cir. 1994) ...........................................................................................................19

*Thompson Medical Co. v. Pfizer Inc.,*
   753 F.2d 208 (2d Cir. 1985) .........................................................................................................14

*United States Shoe Corp. v. Brown Group, Inc.*,
  740 F. Supp. 196 (S.D.N.Y. 1990) .................................................................................24

*United States Shoe Corp. v. Brown Group, Inc.*,
  923 F.2d 844 (2d Cir. 1990) ...........................................................................................24

*Virgin Enterprises Ltd. v. Nawab*,
  335 F.3d 141 (2d Cir. 2003) ...........................................................................................21

*W.W.W. Pharmaceutical Co. v. Gillette Co.*,
  984 F.2d 567 (2d Cir. 1993) ......................................................................................20, 21

*Warwood v. Hubbard*,
  709 P.2d 637 (Mont. 1985)..............................................................................................12

## RULES

Fed. R. Civ. P. 56.................................................................................................................10

Local Civil Rule 56.1.............................................................................................................1

## STATUTES

15 U.S.C. § 1057................................................................................................................11

15 U.S.C. § 1114.............................................................................................................9, 10

15 U.S.C. § 1115................................................................................................................24

15 U.S.C. § 1125.........................................................................................................9, 10, 19

15 U.S.C. § 1127................................................................................................................11

17 U.S.C. § 101 *et seq* ......................................................................................................10

New York General Business Law § 360...............................................................................11

Defendants The Gap, Inc., Gap International Sourcing, Inc., Old Navy, LLC and Old Navy (Apparel), LLC (collectively, "Defendants") move for summary judgment against plaintiff Robert G. Lopez ("Plaintiff"), pursuant to Rule 56 of the Federal Rules of Civil Procedure and Local Civil Rule 56.1, as to all of Plaintiff's claims.

## PRELIMINARY STATEMENT

Plaintiff was born and raised in the neighborhood in the southeastern part of Manhattan known as the Lower East Side.  From his apartment in the Lower East Side, Plaintiff conducts a part-time, sole-proprietor business selling t-shirts, sweatshirts, caps and other apparel that bear the name of his neighborhood and the well-known acronyms for it, LES and LES NYC.  The vast majority of Plaintiff's claimed sales are made "on the street" and paid for in cash, for which he has no records.  Most of his advertising and promotional activities have been in New York City, and focused on the Lower East Side neighborhood.

Well-known companies also have sold apparel bearing the name of the Lower East Side neighborhood for years.  Despite this, since 2010, Plaintiff has brought trademark infringement suits in this District against such companies, including J. Crew, Urban Outfitters, Aeropostale and Payless Shoesource, claiming exclusive trademark rights in the phrase "Lower East Side."

Now Plaintiff seeks to enforce his claimed trademark rights in the geographic terms "Lower East Side" and "LES NYC" against Defendants.  Plaintiff's claims arise from Defendants' sale of two OLD NAVY t-shirts printed with graphics that include the phrases "Lower East Side" and "LES," which were sold exclusively in Old Navy stores and on Old Navy's website.  Plaintiff's claims against Defendants are without merit for four alternative and independent reasons, each of which, standing alone, is sufficient to award summary judgment to

Defendants. First, Plaintiff has no trademark rights in the terms "Lower East Side" and "LES NYC" because the terms are geographically descriptive and do not have secondary meaning in the marketplace as a designation of Plaintiff as the source of goods bearing those terms. Second, even if the claimed marks were not geographically descriptive, Plaintiff has not produced evidence of sufficient use in commerce to have enforceable rights in the terms. Third, even if Plaintiff could show that his alleged marks were protectable, there is no likelihood of confusion among consumers between Defendants' use of geographic descriptions on OLD NAVY t-shirts and Plaintiff's use of the terms on the apparel he offers for sale. Fourth, Defendants' use of the terms constitutes fair use and as such does not submit Defendants to liability. On any one of these bases, summary judgment must be granted to Defendants.

## STATEMENT OF UNDISPUTED FACTS

**A.     Plaintiff's Clothing Business**

On a part-time basis, Plaintiff designs, and has others design and manufacture for him, clothing items that he sells under the name "L.E.S. Clothing Co.," an unincorporated business that he operates from his apartment in the Lower East Side neighborhood of Manhattan. (Transcript of Deposition of Plaintiff, Jan. 10, 2012 ("Tr."), attached as Exhibit A to the Declaration of James D. Weinberger, Esq. ("Weinberger Dec."), at 34:3-12, 35:22-23, 36:6-23.) Born and raised in the Lower East Side, Plaintiff started doing business as the L.E.S. Clothing Co. in 1999, when he began offering t-shirts bearing the phrase "Lower East Side" to residents of his neighborhood. (*Id.* at 35:16-21, 37:19-23, 291:10-11.) To the present, most of his sales are cash sales made "on the street." (*Id.* at 65:23-66:2, 83:8-16.) Plaintiff operates his clothing business "on the side" in addition to his full-time job as a paralegal for a solo intellectual property practitioner, with whom he has worked since 2000. (*Id.* at 13:7-14:7, 70:21-71:2.)

Most of the clothing Plaintiff sells bears the name of his neighborhood, Lower East Side, or its acronyms, LES and LES NYC. (*Id.* at 133:21-24, 300:11-12.) He also sells items bearing the name of another Manhattan neighborhood, Alphabet City, or the phrase "The Lower." (*Id.* at 85:4-11, 95:12-16; Dep. Ex. 6 (representative samples of Plaintiff's products) (Weinberger Dec.

Ex. B).)[1] Plaintiff's products were mostly limited to t-shirts until 2006 or 2007, when he expanded his business to include hooded sweatshirts, sweaters, fitted and snapback caps and ski caps. (Tr. at 87:17-23.) Plaintiff has never hired any employees for, nor has he ever taken a salary from, his L.E.S. Clothing Co. business. (*Id.* at 41:17-42:4.) Instead, he solicits the assistance of friends and acquaintances who help him to create and print the designs for his apparel, and advertise, market and sell his clothing. (*Id.* at 42:6-11, 43:3-52:17.) Plaintiff does not have any formal agreements with any of these friends or acquaintances. (*Id.* at 56:15-17.) Like Plaintiff, most or all of them live in the Lower East Side. (*Id.* at 42:6-11, 43:16-52:17.)

Plaintiff's target customers are people who are either from the Lower East Side neighborhood of New York City or who "have some sort of, you know, affiliation, or knowledge, or association with the Lower East Side in one way or another." (*Id.* at 104:6-21.) Plaintiff explained: "They [his customers] might have a family member that lives there, they may work there, they may have went to school there at one point in time. . . . They want to represent the Lower East Side." (*Id.* at 104:16-21.) Therefore, Plaintiff tries to create designs that customers will perceive as "representing" the Lower East Side neighborhood of Manhattan, and that have an "authentic" Lower East Side "look." (*Id.* at 105:12-18, 107:18-22.) For example, his designs incorporate insider references known to Lower East Side residents, such as the number 6, which symbolizes the Lower East Side as a fictional "sixth borough" of New York City. (*Id.* at 96:19-97:9; Dep. Ex. 6 at LOP00000040 (Weinberger Dec. Ex. B).) He views his use of the business name L.E.S. Clothing Co. as "add[ing] a little authenticity to the product." (Tr. at 108:4-11.) For this reason, his clothing has a hangtag or label and comes in packaging identifying L.E.S. Clothing Co. as the source of the products. (*Id.* at 68:4-10, 92:3-6, 94:25-95:11, 109:22-25; Dep. Ex. 6 (Weinberger Dec. Ex. B).)

As of his deposition, Plaintiff never operated his own retail store. (Tr. at 47:18-19.) Until 2006, his marketing efforts were mostly or all "through word of mouth." (*Id.* 119:23-120:6.) For example, he did not begin printing flyers or stickers until that year. (*Id.*) He

---

[1] Exhibits to Plaintiff's deposition are herein referred to as "Dep. Ex. ___."

currently markets his apparel through flyers, posters and stickers that he posts in New York City, mostly in the Lower East Side, graffiti-style wall murals in the Lower East Side, his website www.lesclothing.com, the social networks Facebook, MySpace and Twitter, and word of mouth. (*Id.* at 80:21, 118:9-19, 120:14-16, 121:2-5.) Other than his website and online social media, Plaintiff's marketing and promotion have taken place principally in New York City, focused in the Lower East Side. (*Id.* at 120:19-121:9, 127:11-129:21, 132:7-11; Dep. Ex. 7 at LOP00000014-22, LOP00000049-50 (Weinberger Dec. Ex. C) (flyers showing Plaintiff wearing one of his t-shirts).) He testified that aspiring musicians have worn his clothing in videos available online, one by a Lower East Side group called Loisaidas, a Spanish term referring to the Lower East Side. (Tr. at 45:24-46:13, 77:4-7.) However, Plaintiff did not produce any videos and did not identify any other musicians who allegedly have worn his clothing in videos. (Weinberger Decl. ¶ 25.) Plaintiff also testified that he has had advertisements in several magazines with whose staff he has a personal relationship, but he did not produce any records of advertising expenditures prior to Defendants' offering for sale of the allegedly infringing t-shirts, and he produced just one magazine advertisement. (Tr. at 121:20-122:21, 123:19-25; Dep. Ex. 7 at LOP00000053 (Weinberger Dec. Ex. C).) Moreover, Plaintiff has never done any market research to determine the number of commercial impressions made by his promotional activities, *i.e.*, how many consumers are actually aware of his brand. (*Id.* at 136:23-137:18, 289:13-20.)

Plaintiff's sales have been predominantly local. He uses a friend's apartment in the Lower East Side to show his goods to potential customers. (*Id.* at 50:12-51:14.) The "majority of sales have generally been on a cash basis" and made "on the street." (*Id.* 65:16-19, 65:25-66:2.) He also sells products in a few barbershops and boutiques located in the Lower East Side. (*Id.* at 97:11-98:24, 99:19-100:10.) Although he has made some sales through his website and his toll-free number, Plaintiff has not made substantial nationwide sales of his clothing items (*id.* at 97:11-15, 147:20-148:3). To take his business to a national level, Plaintiff testified that he would need to team up with a more established company that could help him to "push the brand to places I can't take it." (*Id.* at 148:3-24; Dep. Ex. 8 at D00000029 (Weinberger Dec. Ex. D).)



Plaintiff testified that he has no further records of sales in his possession, custody or control and that he keeps no account books, spreadsheets or the like. (Tr. at 66:19-67:17.) Because his business consists of "[f]or the most part, street sales," which are paid for in cash and for which he prepares no invoices and has no records (*id.* at 65:23-25, 83:15-16), Plaintiff does not know his revenues from the inception of his business to the present, nor does he know the dollar value of sales for any year. (*Id.* at 62:19-63:14, 67:18-22, 68:14-19.)

Despite Plaintiff's failure to keep records,

Similarly, Plaintiff testified that he does not know his expenses or his profits, if any. (Tr. at 61:16-62:10.)

although he "[doesn't] have the appropriate records to give a definitive answer." (*Id.* at 74:5-75:3.)

---

[2] Documented sales are presented as a range because two sales appear to be duplicates of other sales. (Weinberger Dec. ¶ 6, Ex. E.) On March 14, 2012, Plaintiff produced handwritten notes that purport to show additional sales in February 2012. These sales are not included in the total shown above because it is not clear whether these claimed sales are duplicative of other records. (*Id.* ¶ 8, Exs. F & G.) Further, on March 16, 2012 – one business day before this motion was due and months after Defendants requested copies of Plaintiff's tax returns – Plaintiff produced an unverifiable schedule, with no accompanying tax return, for 2010. (*Id.* ¶ 9, Ex. H.)

(Weinberger Dec. Ex. H.)  He is unable to "guesstimate" his profits for 2011.  (Tr. 74:5-75:3.)
Plaintiff also does not know how many units of clothing he has sold.  (*Id.* at 71:7-25.)[3]

## B.      Plaintiff's Alleged Trademarks

Plaintiff claims trademark rights in the phrases "Lower East Side" and "LES NYC"
(together, the "Alleged Marks") based on his use of the terms on apparel since 1999.  Plaintiff
does not own any federal trademark registrations for the Alleged Marks or for the acronym LES
standing alone.  (*Id.* at 153:13-19.)  He has not applied to the United States Patent and
Trademark Office ("USPTO") to register the phrase "Lower East Side" as a trademark.  (*Id.* at
151:7-12.)  On June 1, 2011, he filed an application with the USPTO to register the acronym
LES NYC as a trademark in connection with "[b]aseball caps and hats; [h]ooded sweatshirts;
[s]hort-sleeved or long-sleeved t-shirts; [t]-shirts" (Am. Compl. Ex. D (Dkt. No. 13)), but the
USPTO refused registration on the ground that LES NYC is "primarily geographically
descriptive of the origin of [Plaintiff's] goods."  (*See* Weinberger Dec. Ex. I at 2.)  Plaintiff
submitted a response to the USPTO's refusal, but the USPTO has not reconsidered its finding
that the proposed mark is geographically descriptive and has suspended Plaintiff's application
pending its review of a previously filed application for a similar mark.  (*Id.* Ex. J.)

Plaintiff owns two New York State trademark registrations: (i) New York Registration
No. R31067 for "Lower East Side" in stylized letters with an underline and overline for
"[c]lothing, namely, [t]-shirts, [h]ooded [s]weatshirts, [v]ests, [h]ats and [c]aps" registered on
June 6, 2007 (Am. Compl. Ex. B (Dkt. No. 13)); and (ii) New York Registration No. R31259 for
"LES NYC" inside a circular design made up of stars for "[c]lothing, namely; [t]-shirts, [h]ooded
[s]weatshirts, [v]ests, [h]ats and [c]aps" registered on May 12, 2008 (*id.* Ex. C).

## C.      Plaintiff's Efforts To Enforce His Rights in the Alleged Marks

Plaintiff started trying to enforce his claimed rights in the Alleged Marks in 2007.  (Tr. at

---



169:16-23.)  For example, Plaintiff sent cease-and-desist letters to the owners of a few websites that sold "Lower East Side" and "LES" clothing produced by third parties, but although the websites' owners advised Plaintiff that they had stopped selling the items, Plaintiff did not seek to enforce his alleged rights against the producers of the clothing.  (*Id.* at 173:4-24, 179:9-181:20.)  He admitted that sales of these goods "can potentially be going on."  (*Id.* at 174:5-14.)

In addition to this suit, Plaintiff has brought five *pro se* lawsuits in this District based on claimed rights in the Alleged Marks, against:  (i) Payless Shoesource Worldwide, Inc. ("Payless"); (ii) Aeropostale, Inc. and Aeropostale Procurement Company, Inc. (together, "Aeropostale"); (iii) J. Crew International, Inc., J. Crew Group, Inc. and J. Crew Inc. (collectively, "J. Crew"); (iv) Urban Outfitters, Inc. and Fifth Sun, LLC (together, "Urban Outfitters"); and (v) Coat of Arms, LLC, Hanesbrands, Inc. and Mitchell & Ness Nostalgia, Co. (*Id.* at 183:14-20.) ██████████████████████████████████████████████

███████████████████████████████████████████████████████████████████████████

████ He dismissed his claims against Coat of Arms, LLC and Hanesbrands, Inc. without having entered into formal agreements.  (Weinberger Dec. ¶¶ 16-17, Exs. O, P.)  No court has adjudicated any claim regarding Plaintiff's claimed rights.  (Tr. at 143:10-23.)

████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████████████████

█████████████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████████████



Plaintiff admitted that they have provided him "good publicity." (*Id.* at 247:11-16.) His lawsuits – which he has referred to as his "paper game" (*Id.* at 144:3-12; Dep. Ex. 8 at D00000028 (Weinberger Dec. Ex. D)) – have increased the "popularity" of his clothing products by "adding a little hype and buzz." (Tr. at 146:3-8.) The handful of online articles covering his lawsuits is the most press his business has ever received. (*Id.* at 242:3-13; Dep. Ex. 24 (Weinberger Dec. Ex. R).)

**D.     The Allegedly Infringing OLD NAVY T-Shirts**

Defendants Old Navy (Apparel), LLC and Old Navy, LLC (together, "Old Navy"),



---

4                                    Plaintiff made a contrary affirmative representation to the Court during the parties' December 22, 2011 appearance

5

subsidiaries of Defendant The Gap, Inc., produce and sell casual apparel under the well-known OLD NAVY brand, in existence since 1994. (Declaration of Michelle DeMartini ("DeMartini Dec."), ¶ 3.) Old Navy products are sold in only two channels: Old Navy's full-price retail stores and Old Navy's website. (*Id.* ¶ 4.) Every OLD NAVY-branded product bears the OLD NAVY mark on a hangtag and an interior label. (*Id.* ¶ 5.) Old Navy has had consistently high net sales of OLD NAVY-branded products over the past three fiscal years: approximately $4.95 billion in 2010, $4.95 billion in 2009, and $4.84 billion in 2008. (*Id.* ¶ 6.)

In connection with its regular production and sale of graphic t-shirts with geographic indicia, Old Navy has sold a men's t-shirt, Style No. 838314, printed with the words "Lower East Side LES New York Sports Club" in reference to the Lower East Side neighborhood of Manhattan (the "Old Navy Men's T-Shirt"). (Am. Compl. Exs. G, H (Dkt. No. 13); DeMartini Dec. ¶¶ 8-9, Ex. A.) Old Navy also has sold one other t-shirt that refers to this neighborhood, a women's t-shirt, Style No. 731765, printed with the words "Lower East Side NYC" (the "Old Navy Women's T-Shirt"; together with the Old Navy Men's T-Shirt, the "Old Navy T-Shirts"). (*Id.* ¶¶ 8-9, Ex. B.) The Old Navy Women's T-Shirt was first offered for sale on December 28, 2009, and the Old Navy Men's T-Shirt was first offered for sale in January 2011. (*Id.* ¶ 10.) Defendants sold 71,552 units of the Old Navy T-Shirts, which roughly accounts for less than 0.005% of Old Navy's U.S. sales over the two year period in which the shirts were offered. (*Id.* ¶ 11.) Defendants no longer sell either t-shirt, and are not aware of any incidents of consumer confusion between the Old Navy T-Shirts and any of Plaintiff's products. (*Id.* ¶¶ 12-13.)

E.    **Procedural History**

On May 5, 2011, Plaintiff filed a Complaint against Defendants bringing claims of federal trademark infringement under Section 32(1) of the Trademark Act of 1946, as amended ("Lanham Act"), 15 U.S.C. § 1114(1); federal unfair competition and false designation of origin under Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a); common law trademark infringement and unfair competition under New York law; and unjust enrichment under New York law. (Dkt. No. 1.) On September 7, 2011, Plaintiff filed an Amended Complaint, adding

claims of copyright infringement under the Copyright Act of 1976 ("Copyright Act"), 17 U.S.C.

§ 101 *et seq.*, and conversion under New York law.  (Dkt. No. 13.)  On January 18, 2012, the

Court dismissed with prejudice Plaintiff's claims of federal trademark infringement under

Section 32(1) of the Lanham Act, 15 U.S.C. § 1114(1), and copyright infringement under the

Copyright Act, 17 U.S.C. § 101 *et seq.*  (Dkt. No. 26.)  Discovery closed on January 10, 2012.[6]

## STANDARD OF LAW

Summary judgment shall be granted if "there is no genuine issue as to any material fact

and . . . the movant is entitled to a judgment as a matter of law."  Fed. R. Civ. P. 56(a).  Rule

56(c) "mandates the entry of summary judgment . . . against a party who fails to make a showing

sufficient to establish the existence of an element essential to that party's case, and on which that

party will bear the burden of proof at trial."  *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

A dispute about a material fact is genuine "if the evidence is such that a reasonable jury could

return a verdict for the nonmoving party."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248

(1986).  The party opposing summary judgment "must do more than simply show that there is

some metaphysical doubt as to the material facts. . . . [T]he nonmoving party must come forward

with specific facts showing that there is a *genuine issue for trial*."  *Caldarola v. Calabrese*, 298

F.3d 156, 160 (2d Cir. 2002) (internal citation and quotations omitted).

## ARGUMENT

Summary judgment should be granted in favor of Defendants on each of Plaintiff's

remaining claims:  federal unfair competition and false designation of origin under Section 43(a)

of the Lanham Act, 15 U.S.C. § 1125(a) (Count II); common law trademark infringement and

unfair competition under New York law (Count III); unjust enrichment under New York law

(Count V); and conversion under New York law (Count VI).  Based on the evidence, no

reasonable juror could find Defendants liable under any of Plaintiff's claims.

---

[6] Each party has propounded and answered interrogatories and requests for the production of
documents, each party has produced documents, and Defendants have taken the deposition of
Plaintiff.  (Weinberger Dec. ¶ 20.)  Plaintiff proceeded *pro se* in this action until February 2012,
when the Court referred him for *pro bono* representation for purposes of this motion.  (*Id.*)

Because of the overlapping facts and law (*see* note 10, *infra*), we focus on Plaintiff's claim of federal unfair competition and false designation of origin under the Lanham Act (Count II). This claim requires Plaintiff to prove that his Alleged Marks are valid trademarks that are entitled to protection and that Defendants' actions are likely to cause confusion with such marks. *See Morningside Grp. Ltd. v. Morningside Capital Grp., L.L.C.,* 182 F.3d 133, 137 (2d Cir. 1999).[7] Here, no reasonable juror could find that Plaintiff's Alleged Marks are valid trademarks entitled to protection, or that Defendants' use of the phrases "Lower East Side" and "LES" on the Old Navy T-Shirts is likely to cause confusion with such marks. Further, even if Plaintiff's Alleged Marks were valid trademarks and confusion were likely, summary judgment should be granted to Defendants because Defendants' use of the Alleged Marks constitutes classic fair use under the Lanham Act. On any one of these bases, the Court may grant summary judgment to Defendants on all of Plaintiff's claims.[8]

## I.   THE ALLEGED MARKS ARE NOT PROTECTABLE BECAUSE THEY ARE GEOGRAPHICALLY DESCRIPTIVE AND LACK SECONDARY MEANING

A trademark is a designation used "to identify and distinguish" the goods of a person. *See* Lanham Act § 45, 15 U.S.C. § 1127. Trademark law "set[s] forth four categories of terms, each one conferring a differing degree of eligibility for trademark protection," *i.e.*, (1) generic, (2) descriptive, (3) suggestive, and (4) arbitrary or fanciful. *Simon & Schuster, Inc. v. Dove Audio, Inc.*, 970 F. Supp. 279, 292 (S.D.N.Y. 1997) (quoting *Abercrombie & Fitch Co. v. Hunting World, Inc.*, 537 F.2d 4, 9 (2d Cir. 1976)). A court may determine the classification of a mark on summary judgment as a matter of law where, as here, there are no material disputed

---

[7] Because Plaintiff does not own a federal trademark registration, he may not avail himself of the statutory presumption that the Alleged Marks are valid or protectable. *See* Lanham Act § 7(b), 15 U.S.C. § 1057(b); *see also Dalton Enters., Inc. v. Copeland Coating Co.*, No. 90 Civ. 320, 1991 WL 117698, *14 (N.D.N.Y. June 18, 1991). Plaintiff's pending federal trademark application does not create any such presumption. *See id.* Plaintiff's New York state trademark registrations also do not create any presumption of validity. *See* N.Y. Gen. Bus. Law § 360-d.

[8] As explained *infra*, n. 10, Plaintiff's claim of common law trademark infringement and unfair competition under New York law is subject to the same standard as Plaintiff's federal Lanham Act claim. Similarly, Plaintiff's claims of unjust enrichment and conversion under New York law depend on the same factual allegations as Plaintiff's federal Lanham Act claim.

facts relating to the issue. *See Lemme v. Nat'l Broad. Co.*, 472 F. Supp. 2d 433, 443 (E.D.N.Y. 2007). A descriptive term "is eligible for protection if it has become distinctive of the producer's goods in commerce. This distinctiveness is generally called secondary meaning." *Simon & Schuster*, 970 F. Supp. at 292.

### A.    The Alleged Marks Are Geographically Descriptive

A geographically descriptive term is a type of descriptive term that "designates geographical location and would tend to be regarded by buyers as descriptive of the geographic location or origin of the goods or services." *Forschner Grp., Inc. v. Arrow Trading Co.*, 30 F.3d 348, 355 (2d Cir. 1994) (citation omitted). For example, in *Greenpoint Financial Corp. v. The Sperry & Hutchinson Co.*, 116 F. Supp. 2d 405 (S.D.N.Y. 2000), the court found that the term GREENPOINT was geographically descriptive of a bank that had originated in the Greenpoint neighborhood of Brooklyn but had expanded into other areas of New York State and Connecticut. *Id.* at 409 ("Plaintiff's 'GREENPOINT' mark is 'descriptive of the geographic origin of a product,' here Greenpoint, Brooklyn, and 'will not receive trademark protection absent proof of secondary meaning.'") (quoting *Forschner*, 30 F.3d at 348). Similarly, other courts have found the following phrases to be geographically descriptive and thus not entitled to protection absent a showing of secondary meaning: NEW YORK SHOW, *Jewelers of America, Inc. v. Amirghanyan*, 115 F.R.D. 274, 276-77 (S.D.N.Y. 1987); BANK OF TEXAS, *Bank of Texas v. Commerce Southwest, Inc.*, 741 F.2d 785 (5th Cir. 1984); YELLOWSTONE OUTFITTERS, *Warwood v. Hubbard*, 709 P.2d 637 (Mont. 1985); and IMPORTED FROM DETROIT, *Chrysler Group L.L.C. v. Moda Group L.L.C.*, 796 F. Supp. 2d 866 (E.D. Mich. 2011). The user of a geographically descriptive term must prove that the term has secondary meaning, or else it is not a valid trademark and not entitled to protection. *See Jewelers of Am.*, 115 F.R.D. at 277 ("[U]nder § 43(a) of the Lanham Act, such a geographic name may be protected if secondary meaning can be established.").

Here, the Alleged Marks – LOWER EAST SIDE and LES NYC – are geographically descriptive of the Lower East Side neighborhood of Manhattan, as Plaintiff admitted in his

deposition. (*See supra* at 2-4.)  Plaintiff described the Lower East Side neighborhood as bounded on the south by "the [housing] projects that start by One Police Plaza, or by the South Street Seaport," on the north by "14th Street in Alphabet City" (Tr. 291:12-17), on the west by the neighborhood Soho, and on the east by the East River (*id.* 317:3-7).  The term "Lower East Side" is defined in online dictionaries and the online encyclopedia Wikipedia as the southeastern neighborhood of Manhattan, New York City.  (Dep. Ex. 9 (excerpts) (Weinberger Dec. Ex. S).)  The phrases "Lower East Side," "LES" and "LES NYC" are frequently used in online media to describe the neighborhood in Manhattan.  (Dep. Ex. 9 (excerpts) (Weinberger Dec. Ex. T).)  Numerous businesses and organizations located in the Lower East Side have used the terms "Lower East Side" or "LES" in their name.  (Dep. Ex. 10 (excerpts) (Weinberger Dec. Ex. U).)

Moreover, the Alleged Marks as used on Plaintiff's clothing "convey[] an immediate idea" about the products' provenance and are therefore descriptive marks. *See Bernard v. Commerce Drug Co.*, 964 F.2d 1338, 1341 (2d Cir. 1992); *see also Burke-Parsons-Bowlby Corp. v. Appalachian Log Homes, Inc.*, 871 F.2d 590, 595 (6th Cir. 1989) ("Where it is determined that a mark as perceived by potential purchasers describes the geographical origin of the goods, the mark is primarily geographically descriptive.").  Born and raised in the Lower East Side, Plaintiff operates his business from his apartment in the Lower East Side.  (*Supra* at 2.)  From the inception of his business in 1999 to the present, the majority of his sales have been cash sales made "on the street" and focused in his neighborhood.  (*Supra* at 2, 4-5.)  Plaintiff's target customers are people who are either from the Lower East Side neighborhood of New York City or who "have some sort of . . . affiliation, or knowledge, or association with the Lower East Side in one way or another . . . want to represent the Lower East Side."  (*Supra* at 3.)  Plaintiff tries to create designs that "represent" the Lower East Side and provide an "authentic" Lower East Side "look," including insider references known to residents.  (*Id.*)  Plaintiff's non-Internet marketing is focused in the Lower East Side.  (*Supra* at 3-4.)  He uses a friend's apartment in the Lower East Side to show his goods to potential customers.  (*Supra* at 4.)  He sells his products in barbershops and boutiques located in the Lower East Side.  (*Id.*)  No reasonable juror could find

that the Alleged Marks do not describe of the Lower East Side neighborhood of Manhattan, or that consumers do not perceive the Alleged Marks as describing the geographic origin of Plaintiff's products.

**B.      The Alleged Marks Do Not Have Secondary Meaning**

As geographically descriptive terms, Plaintiffs' Alleged Marks are not valid trademarks because they have not achieved secondary meaning in the marketplace. *See Bristol-Myers Squibb Co. v. McNeil-P.P.C., Inc.*, 973 F.2d 1033, 1039 (2d Cir. 1992).  To prove secondary meaning, Plaintiff must overcome "vigorous evidentiary requirements" to show that consumers understand the Alleged Marks as identifying Plaintiff as the source of products bearing those terms. *See id.* at 1041; *see also Thompson Med. Co. v. Pfizer Inc.*, 753 F.2d 208, 217 (2d Cir. 1985).  Relevant factors include advertising expenditures, consumer studies linking the mark to a source, unsolicited media coverage of the product, sales success, attempts to plagiarize the mark, and the length and exclusivity of the mark's use. *Centaur Commc'ns, Ltd. v. A/S/M Commc'ns, Inc.*, 830 F.2d 1217, 1220, 1222 (2d Cir. 1987), *overruled on other grounds by Bristol-Myers*, 973 F.2d at 1043; *see also Ralston Purina Co. v. Thomas J. Lipton, Inc.*, 341 F. Supp. 129, 133 (S.D.N.Y. 1972) (term has secondary meaning only if the "*primary* significance of the term in the minds of the consuming public is not the product but the producer") (citation omitted).  The test of secondary meaning is at the time Defendants offered the allegedly infringing product, namely, December 28, 2009.  (*Supra* at 9.)  *See Paper-Cutter, Inc. v. Fay's Drug Co.*, 900 F.2d 558, 560, 564 (2d Cir. 1990) (owner of a descriptive mark "must demonstrate that the mark had acquired secondary meaning before its competitor commenced use of the mark"); *Greenpoint*, 116 F. Supp. 2d at 409 (same).

Here, there is no genuine issue of material fact as to whether Plaintiff can overcome the "vigorous evidentiary requirements" to show that the Alleged Marks primarily designated *Plaintiff* as the source of the products, as opposed to simply identifying the neighborhood, at the time Defendants first used the terms.  Nearly all of Plaintiff's advertising and promotional activities have consisted of posting flyers and stickers in New York City, focused in the Lower

East Side. (*Supra* at 3-4.) There is no evidence of *any* advertising expenditures prior to Defendants' first sale of the allegedly infringing t-shirts or *any* consumer studies, and there is extremely limited evidence of sales. (*Supra* at 4-6.) In *Greenpoint*, the court found that the plaintiff – which had been known as a savings bank in Brooklyn since 1868 and had expanded into nearly seventy offices across the country – failed to show secondary meaning for its geographically descriptive term GREENPOINT, where it had not submitted any evidence documenting advertising expenditures, had submitted a methodologically flawed survey showing only some name recognition in the New York metropolitan area, and had not demonstrated exclusive use of the term within the region. 116 F. Supp. 2d at 408, 409-10 & n.1. Here, Plaintiff cannot produce *any* evidence of secondary meaning. *See also Jewish Sephardic Yellow Pages, Ltd. v. DAG Media, Inc.*, 478 F. Supp. 340, 345 (E.D.N.Y. 2007) (even though plaintiff claimed it spent more than tens of thousands of dollars annually to advertise its mark, no secondary meaning because plaintiff failed to produce evidence substantiating this figure and failed to submit "concrete evidence" that these efforts succeeded in reaching consumers); *Black & Decker Corp. v. Dunsford*, 944 F. Supp. 220, 227 n. 9 (S.D.N.Y. 1996) (plaintiff failed to show secondary meaning where it did not produce consumer surveys; "consumer surveys are the most direct and persuasive evidence of secondary meaning") (citation omitted).

The only evidence of Plaintiff's sales shows ▮▮▮▮▮▮ in sales prior to Defendants' first offering of the Old Navy Women's T-Shirt in December 2009 – the date by which Plaintiff must establish secondary meaning. Further, the objective, verifiable evidence shows that Plaintiff made ▮▮▮▮▮ in gross sales prior to Defendants' first offering of the allegedly infringing Old Navy Men's T-Shirt in January 2011. (*Supra* at 5-6, 9.) ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮▮▮▮ Further, most of Plaintiffs' sales in each year were "street sales," concentrated in the Lower East Side neighborhood and paid for in cash.

---

9 ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮▮

(*Supra* at 2, 5.) Such limited sales with, for the most part, extremely limited geographic scope cannot establish secondary meaning, especially where more than 98% of the claimed sales are unsubstantiated. Even if they could be substantiated, sales of ███████ per year are insufficient to show that the Alleged Marks have achieved secondary meaning. *See Black & Decker*, 944 F. Supp. at 227 (holding on summary judgment that sales of approximately $16,000 per year constituted only "minimal commercial activity" that did "not come close to meeting the substantial level of sales volume required for a showing of secondary meaning") (collecting cases). Therefore, Plaintiff has not produced sufficient proof of sales to show secondary meaning. *See Jewish Sephardic Yellow Pages*, 478 F. Supp. 2d at 346 (plaintiff failed to show secondary meaning where it claimed significant sales but did not produce "any actual sales figures"; claims were "no substitute for hard numbers").

        As to the remaining secondary meaning factors, there is no evidence that Defendants or any of the third parties against whom Plaintiff has tried to enforce his claimed rights had any knowledge of Plaintiff's Alleged Marks, much less plagiarized or copied them. Further, Plaintiff is aware of only one instance of unsolicited "media" coverage, and this was in an online blog. (Tr. at 134:12-135:21.) Moreover, Plaintiffs' use of the Alleged Marks has been anything but exclusive, as the Alleged Marks are widely used by third parties as geographically descriptive terms. (*Supra* at 12-13.) Third parties use the Alleged Marks on various goods, including t-shirts, further diminishing the Alleged Marks' ability to designate Plaintiff as the sole source of goods bearing the terms. (Dep. Ex. 11 (Weinberger Dec. Ex. V).) *See Greenpoint*, 116 F. Supp. 2d at 410 ("A quick glance through the Brooklyn phone directory establishes that more than fifty other establishments conduct business under the 'Greenpoint' name. Such significant third party usage also undermines Plaintiff's claim of secondary meaning."). Plaintiff has not sought to enforce his rights against these third-party uses. (Tr. at 168:5-7.)

        There is no genuine issue that consumers associate the Alleged Marks with a geographical area in New York City, rather than primarily with Plaintiff. Therefore, the Alleged Marks are not protectable. The Court may grant summary judgment to Defendants on this basis

alone. *See Bernard*, 964 F.2d at 1342-43 (affirming summary judgment for defendants where descriptive trademark was not proved to have secondary meaning because plaintiff "produced no evidence that a significant number of prospective purchasers associate his . . . trademark with his product"); *Info. Superhighway, Inc. v. Talk Am., Inc.*, 395 F. Supp. 2d 44, 52 (S.D.N.Y. 2005) (granting summary judgment where plaintiff failed to show secondary meaning of a descriptive term because "[n]o evidence was submitted with respect to any significant advertising expenditures promoting [the term], consumer studies or expert witnesses linking [the term] to a single source, sales related to [the term], or a lengthy and exclusive use of [the term]").)

## II.   PLAINTIFF HAS NOT PRODUCED SUFFICIENT PROOF OF USE OF THE ALLEGED MARKS

As an alternative basis for finding that the Alleged Marks are not protectable, the Court may also find that Plaintiff, because he has no proof of the vast majority of his claimed sales, has not made sufficient use of the Alleged Marks so as to entitle them to protection under the Lanham Act. *See*, *e.g.*, *Gameologist Grp., L.L.C. v. Scientific Games Int'l, Inc.*, No. 09 Civ. 6261(JGK), 2011 WL 5075224, *8-9 (S.D.N.Y. Oct. 25, 2011) (dismissing claims on summary judgment for Plaintiff's failure to prove sufficient use of claimed trademark); *see also Int'l Healthcare Exch., Inc. v. Global Healthcare Exch., L.L.C.*, 470 F. Supp. 2d 365, 371-72 (S.D.N.Y. 2007) (same). A term is not protected as a trademark unless it is "used in a way sufficiently public to identify or distinguish the marked goods in an appropriate segment of the public mind as those of the adopter of the mark." *Gameologist*, 2011 WL 5075224, at *7; *see also Glow Indus., Inc. v. Lopez*, 252 F. Supp. 2d 962, 983 (C.D. Cal. 2002) ("Generally, the senior user of a mark is entitled to assert trademark rights in all areas in which it has legally sufficient market penetration. This is determined by examining the trademark user's volume of sales and growth trends, the number of persons buying the trademarked product in relation to the number of potential purchasers, and the amount of advertising.").

Here, Plaintiff has not produced evidence of sufficient market penetration and, therefore, has not used the Alleged Marks in a way sufficiently public to distinguish his goods. Plaintiff's marketing, advertising and promotion have been scant and, for the most part, geographically

limited to New York City. (*Supra* at 3-4.) He has produced evidence of ▮▮▮▮▮▮ in sales

prior to Defendants' first offerings of the Old Navy T-Shirts and is unable to substantiate his

testimony that his annual sales ranged ▮▮▮▮▮▮▮▮▮ over the past five years. (*Supra* at

5-6.) Indeed, the inconsistency between his testimony and his 2010 tax schedule, ▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮, underscores why courts require verifiable proof of sales

when considering whether an alleged common law mark is protectable under Section 43(a) of the

Lanham Act. (*Supra* at 5.) *See, e.g.*, *Gameologist Grp.*, 2011 WL 5075224 at *8-9.

Further, he has submitted no evidence of market share. *See, e.g.*, *Major League Baseball*

*Props., Inc. v. Opening Day Prods., Inc.*, 385 F. Supp. 2d 256, 266 (S.D.N.Y. 2005) ($3,000 in

sales did not indicate sufficient use to entitle mark to protection); *Hous. & Servs., Inc. v. Minton*,

No. 97 Civ. 2725, 1997 WL 349949, at *4 (S.D.N.Y. June 24, 1997) (advertising and

promotional activities must be "open and notorious" or "of such a nature and extent that the

[mark] has become popularized in the public mind"); *Glow Indus.*, 252 F. Supp. 2d at 985

(because plaintiff failed to quantify sales, court held "the evidence is not adequate to establish

that [plaintiff] has legally sufficient market penetration in any territory . . ."). In fact, Plaintiff

essentially admitted that his business is small and local: he testified that to take his business to a

national level, he would need to team up with a more established company that could help him

"push the brand to places I can't take it." (*Supra* at 4; *see also* Tr. at 130:23-25 (majority of

sales from New York City).) ▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮

Accordingly, summary judgment should be granted on the basis that Plaintiff cannot

prove sufficient use of the Alleged Marks in commerce so as to entitle them to protection.

## III.   THERE IS NO GENUINE ISSUE OF MATERIAL
FACT AS TO LIKELIHOOD OF CONFUSION

Even if Plaintiff can show that the Alleged Marks are protectable, under the Lanham Act,

he still cannot prevail on his trademark claims. In addition to ownership of a valid mark, to

succeed on his claim for federal unfair competition and false designation of origin under Section 43(a) of the Lanham Act, Plaintiff must further show that Defendants' Old Navy T-Shirts are "likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of [Defendants] with [Plaintiff], or as to the origin, sponsorship, or approval of [Defendants'] goods, services, or commercial activities by [Plaintiff] . . . ." 15 U.S.C. § 1125(a)(1)A). The question of likelihood of confusion is a question of law for the Court. *See, e.g., Sterling Drug, Inc. v. Bayer AG*, 14 F.3d 733, 743 (2d Cir. 1994).

To assess the likelihood of confusion between two marks, courts in this Circuit apply the eight-factor test set forth in *Polaroid Corp. v. Polarad Elecs., Corp.*, 287 F.2d 492 (2d Cir. 1961). The factors are: (1) strength of the plaintiff's mark; (2) degree of similarity between the marks; (3) proximity of the parties' goods and services in the marketplace; (4) likelihood that the plaintiff will bridge any gap between it and defendant; (5) actual confusion; (6) the defendant's intent in adopting its mark; (7) quality of the defendant's product; and (8) sophistication of buyers. *Id.* at 495. In balancing the *Polaroid* factors, "courts generally should not treat any single factor as dispositive; nor should a court treat the inquiry as a mechanical process by which the party with the greatest number of factors wins. Instead, the court should focus on the ultimate question of whether consumers are likely to be confused." *De Beers LV Trademark Ltd. v. DeBeers Diamond Syndicate, Inc.*, 440 F. Supp. 2d 249, 274 (S.D.N.Y. 2006). Here, none of the *Polaroid* factors favors Plaintiff.

**Strength**. In determining the strength of the mark, courts look to the "well-established secondary meaning factors set forth in *Centaur Communications*. . . ." *Gameologist*, 2011 WL 5075224, at *11 (citing *Centaur Commc'ns*, 830 F.2d at 1222). As explained above, the Alleged Marks have no demonstrated public recognition, let alone achieved secondary meaning. (*Supra* at 14-17.) This factor therefore weighs against Plaintiff.

**Similarity**. To assess the similarity of the marks, "courts must analyze the mark's overall impression on a consumer, considering the context in which the marks are displayed and the totality of factors that could cause confusion among prospective purchasers." *Louis Vuitton*

*Malletier v. Burlington Coat Factory Warehouse Corp.*, 426 F.3d 532, 537 (2d Cir. 2005) (quotation marks and citation omitted). Here, the prominent display of the famous OLD NAVY house mark where the Old Navy T-Shirts were sold and on the shirts' tags "significantly reduces, if not altogether eliminates, any likelihood of consumer confusion." *Nabisco, Inc. v. Warner-Lambert Co.*, 220 F.3d 43, 46 (2d Cir. 2000); *see also W.W.W. Pharm. Co. v. Gillette Co.*, 984 F.2d 567, 573 (2d Cir. 1993), *superseded on other grounds by Deere & Co. v. MTD Prods., Inc.*, 41 F.3d 39 (2d Cir. 1994) ("[W]hen a similar mark is used in conjunction with a company name, the likelihood of confusion may be lessened."). (DeMartini Dec. ¶ 5.)

Moreover, the Old Navy T-Shirts are significantly different in appearance from Plaintiff's products. The Old Navy Women's T-Shirt features flowers, pastel colors and the phrase "Lower East Side NYC" in a cursive script. (*See* DeMartini Dec. Ex. B.) Plaintiff has never used a flower on any of his designs, has never offered t-shirts with the color combination shown on the Old Navy Women's T-Shirt, and has not produced any evidence of a cursive script used on his goods. (Tr. at 254:15-19, 255:10-11; Dep. Ex. 6 (Weinberger Dec. Ex. B).) The Old Navy Men's T-Shirt – which features the words "Lower East Side LES New York Sports Club," with the letters of "LES" intersecting one another – also is dissimilar from Plaintiff's products. (*See* DeMartini Dec. Ex. A.) Plaintiff has never used the words "New York Sports Club" on his products. The fonts used by Plaintiff and Defendants are different. The ways in which the letters on Plaintiff's goods intersect is different from the ways in which the letters on the Old Navy Men's T-shirt intersect. (*Compare* Am. Compl. Ex. G *with* DeMartini Dec. Ex. A.) Defendants do not use one of the Alleged Marks, LES NYC, at all. Given these dissimilarities, the parties' products differ in the overall impression they convey. *See Lang v. Ret. Living Publ'g Co.*, 949 F.2d 576, 582 (2d Cir. 1991) (products using identical terms were nonetheless dissimilar because products' overall appearance conveyed different "general impression" to public); *Major League Baseball*, 385 F. Supp. 2d at 267 (degree of similarity was low where both products used phrase "opening day" but logos and other depictions "convey[ed] a different impression" to the public). Therefore, this factor weighs against Plaintiff.

*Proximity of the parties' goods and services*.  The inquiry into the proximity of the parties' offerings "concerns whether and to what extent the two products compete with each other." *Morningside Grp.*, 182 F.3d at 140.  "When the two users of a mark are operating in completely different areas of commerce, consumers are less likely to assume that their similarly branded products come from the same source." *Virgin Enters. Ltd. v. Nawab*, 335 F.3d 141, 150 (2d Cir. 2003).  Here, the competitive proximity between the parties' products is slim because Plaintiff does not sell his clothing items in Old Navy's stores or website, which are the only channels of trade for OLD NAVY products.  (DeMartini Dec. ¶ 4; Tr. at 100:24-101:10.) Moreover, Plaintiff admitted that his customers are not Old Navy customers.  (*Id.* at 257:2-4.) He also testified that he "wouldn't be caught dead in an Old Navy t-shirt. . . . I mean, my credibility, it would be shot in the 'hood for real."  (*Id.* at 256:19-24.)  ███████████████ ████████████████████████████████████████████████████ ████████████████████████████████████████, while Old Navy sells its goods nationwide (DeMartini Dec. ¶ 4).  Therefore, this factor weighs against Plaintiff.

*Likelihood of bridging the gap*.  This factor refers to the likelihood that the senior user of a mark will enter the junior user's market in the future, or that consumers will perceive that this is likely to occur.  *Morningside Grp.*, 182 F.3d at 141.  Here, Plaintiff is unable to move into Defendants' market.  Plaintiff's goods could not be sold at Old Navy's stores or website, which carry predominantly OLD NAVY-branded goods.  (*Supra* at 8-9.) ████████████████ ████████████████████████████████████████████████████████ █████████████████████████  Therefore, there is no genuine issue of material fact as to whether Plaintiff will enter Defendants' market or consumers will perceive this is likely to occur.

*Actual confusion*.  For purposes of the Lanham Act, actual confusion means "consumer confusion that enables a seller to pass off his goods as the goods of another." *W.W.W. Pharm.*, 984 F.2d at 574.  Plaintiff has produced *no* admissible evidence of actual confusion.  Although he testified that he remembered "someone in the street" who may have asked him if he "had a deal" with Old Navy, he could not remember the person's name or provide any details of the

communication. (Tr. at 261:22-264:10.) This hearsay – which is ambiguous at best – is not sufficient proof of actual confusion. *See Gameologist*, 2011 WL 5075224, at *15 (finding factor to weigh against plaintiff where plaintiff presented only "anecdotal, hearsay evidence of confusion on the part of friends and family members of [plaintiff's] current or former members"). Plaintiff does not know whether anyone bought the Old Navy T-Shirts under the belief that they were made by him. (Tr. at 260:21-261:7.) He does not know anyone who bought the Old Navy T-Shirts under a belief that he had given Old Navy a license. (*Id.* at 261:8-13.) And Defendants also are unaware of any incidents of actual confusion. (DeMartini Dec. ¶ 13.) Therefore, this factor weighs against Plaintiff.

**Defendants' intent**. The inquiry into intent "considers whether the defendant adopted its mark with the intention of capitalizing on the plaintiff's reputation and goodwill and on any confusion between his and the senior user's product." *De Beers*, 440 F. Supp. 2d at 278. The "only relevant intent is intent to confuse. There is a considerable difference between an intent to copy and an intent to deceive." *Starbucks Corp. v. Wolfe's Borough Coffee, Inc.*, 588 F.3d 97, 117 (2d Cir. 2009) (citation omitted). Here, there is no evidence that Defendants intended to confuse consumers. *See also Major League Baseball*, 385 F. Supp. 2d at 268 (lack of evidence of "any reputation or goodwill" upon which the defendant "could possibly have hoped to capitalize" weighed against finding of bad faith). This factor weighs against Plaintiff.

**Quality of Defendants' products**. This factor "is primarily concerned with whether the senior user's reputation could be jeopardized by virtue of the fact that the junior user's product is of inferior quality." *Arrow Fastener Co. v. Stanley Works*, 59 F.3d 384, 398 (2d Cir. 1995); *see also Morningside Grp.*, 182 F.3d at 142 (factor looks to "whether defendant's products or services are inferior to plaintiff's, thereby tarnishing plaintiff's reputation if consumers confuse the two"). Plaintiff testified that he has no specific knowledge of or view on the quality of Old Navy's clothing. (Tr. at 258:18-21.) Therefore, this factor weighs against Plaintiff.

**Sophistication of buyers**. "In considering the sophistication of consumers, a court must evaluate '[t]he general impression of the ordinary purchaser, buying under the normally

prevalent conditions of the market and giving the attention such purchasers usually give in buying that class of goods. . . .'" *Gameologist*, 2011 WL 5075224, at *16 (quoting *McGregor– Doniger Inc. v. Drizzle, Inc.*, 599 F.2d 1126, 1137 (2d Cir. 1979)).   Generally, a higher sophistication of consumers reduces the likelihood of confusion.   *See Centaur Commc'ns*, 830 F.2d at 1228.   Here, Plaintiff has admitted that consumers of t-shirts are sophisticated:  he testified that people are careful about the kind of clothing they buy, and that his customers have told him that they put care into the decision to buy clothing. (Tr. at 258:22-259:4, 259:13-21.) Therefore, this factor weighs against Plaintiff.

None of the *Polaroid* factors weighs in favor of Plaintiff.   No reasonable juror could find that "numerous ordinary prudent purchasers are likely to be misled or confused as to the source of the product in question because of the entrance in the marketplace of [Defendants'] mark." *Gruner + Jahr USA Publ'g v. Meredith Corp.*, 991 F.2d 1072, 1077 (2d Cir. 1993).   No reasonable juror could find that "there may be confusion as to [Plaintiff's] sponsorship or endorsement of the junior mark."   *Hormel Foods Corp. v. Jim Henson Prods., Inc.*, 73 F.3d 497, 502 (2d Cir. 1996).   Therefore, Plaintiff's Lanham Act claim should be dismissed.[10]

---

[10] Plaintiff's state law claims are based on the same factual allegations as Plaintiff's Lanham Act claim, and therefore should be dismissed as a matter of law.   As to Plaintiff's claim of common law trademark infringement and unfair competition under New York law (Count III), the elements of the cause of action "are essentially the same as under the Lanham Act."   *See ESPN, Inc. v. Quiksilver, Inc.*, 586 F. Supp. 2d 219, 230 (S.D.N.Y. 2008).   In addition, the common law claim "is not viable without a showing of bad faith."   *Genesee Brewing Co., Inc. v. Stroh Brewing Co.*, 124 F.3d 137, 149 (2d Cir. 1997).   Here, summary judgment should be granted to Defendants for the same reasons as those set forth above with respect to Plaintiff's Lanham Act claim.   Further, summary judgment should be granted to Defendants because there is no genuine issue of material fact as to Defendants' good faith in using the terms at issue.   (*Infra* at 24-25.)

As to Plaintiff's claim of unjust enrichment under New York law (Count V), Plaintiff cannot show any genuine issue of material fact as to whether (1) Defendants were enriched, (2) at Plaintiff's expense, or (3) that it is against equity and good conscience to permit Defendants to retain what Plaintiff seeks to recover.   *See Old Republic Nat'l Title Ins. Co. v. Luft*, 859 N.Y.S.2d 261, 262 (N.Y. App. Div. 2008).   This claim must fail because there is no evidence that Defendants were enriched at Plaintiff's expense.   *See Gameologist*, 2011 WL 5075224, at *20 (dismissing unjust enrichment claim on summary judgment).

As to Plaintiff's claim of conversion under New York law (Count VI), Plaintiff cannot show any genuine issue of material fact as to whether Defendants have "exercise[d] unauthorized dominion over personal property in interference with [Plaintiff's] legal title or superior right of possession."   *See LoPresti v. Terwilliger,* 126 F.3d 34, 41 (2d Cir. 1997) (citation omitted).

IV.   **DEFENDANTS' USE OF "LOWER EAST SIDE" AND "LES"
      TO REFER TO THE LOWER EAST SIDE NEIGHBORHOOD
      OF NEW YORK CITY CONSTITUTES FAIR USE**

Finally, even in the unlikely event that the Court finds that the Alleged Marks are

protectable and that Defendants' conduct has caused a likelihood of confusion, Defendants' acts

are protectable fair use.  Classic or statutory fair use permits a third party's good faith use of

even a protected mark if used in its descriptive sense, rather than as a trademark.  15 U.S.C.

§ 1115(b)(4) (fair use may be established when the challenged term "is a use, otherwise than as a

mark, . . . of a term or device which is descriptive of and used fairly and in good faith only to

describe the goods or services of such party . . . .").  This is because notwithstanding a likelihood

of confusion, there is a broad right to make fair descriptive use of terms claimed as trademarks.

*KP Permanent Make-Up, Inc. v. Lasting Impression I, Inc.*, 543 U.S. 111, 121-22 (2004) (fair

use defense recognizes "the undesirability of allowing anyone to obtain a complete monopoly on

use of a descriptive term simply by grabbing it first"); *see also Cosmetically Sealed Indus., Inc.*

*v. Chesebrough-Pond's USA Co.*, 125 F.3d 28, 30 (2d Cir. 1997); *EMI Catalogue P'Ship v. Hill,*

*Holliday, Connors, Cosmopulos Inc.*, 228 F.3d 56, 65 (2d Cir. 2000); *N.Y. Mercantile Exch., Inc.*

*v. IntercontinentalExchange, Inc.*, 389 F. Supp. 2d 527, 545-46 (S.D.N.Y. 2005).

Here, Defendants' use of the terms "Lower East Side" and "LES" constitutes fair use

because Defendants used the terms in good faith "in their primary descriptive and non-trademark

sense," *i.e.*, to describe a geographical location.  *See U.S. Shoe Corp. v. Brown Grp, Inc.*, 740 F.

Supp. 196, 198 (S.D.N.Y. 1990), *aff'd*, 923 F.2d 844 (2d Cir. 1990).  In *Dessert Beauty, Inc. v.*

*Fox*, 568 F. Supp. 2d 416, 424 (S.D.N.Y. 2008) *aff'd*, 329 F. App'x 333 (2d Cir. 2009), the court

held that the defendant did not use the term "love potion" as a trademark "because the source of

its fragrance products was not identified by that term," and therefore the use of the term

constituted fair use.  The court found that the products' source was instead "indicated by its own

trademark DESSERT in conjunction with the lip stain logo and catch phrase 'Sexy Girls Have

Dessert,' which were prominently displayed on all DBI products."  *Id.*  *See also Cosmetically*

*Sealed*, 125 F.3d at 30; *Kelly-Brown v. Winfrey*, No. 11 Civ. 7875(PAC), 2012 WL 701262, *3-6

(S.D.N.Y. Mar. 6, 2012) (non-trademark use of phrase "Own Your Power" descriptively on

magazine cover was fair use and did not infringe plaintiff's OWN YOUR POWER trademark).
Similarly, here, the phrases "Lower East Side" and "LES" on the Old Navy T-Shirts do not
indicate the source of the goods – Old Navy – but are used only in their "descriptive sense." *See
id.* (quoting *Car-Freshner Corp. v. S.C. Johnson & Son, Inc.*, 70 F.3d 267, 269 (2d Cir. 1995)).
Moreover, the Old Navy T-Shirts' source is indicated by the OLD NAVY house mark that
appears on every good. (DeMartini Dec. ¶ 5.)

A "lack of good faith [is equated] with the subsequent user's intent to trade on the good
will of the trademark holder by creating confusion as to source or sponsorship." *EMI Catalogue*,
228 F.3d at 66. Here, there is no evidence that Defendants intended to cause confusion. (*Supra*
at 22.) Further, Defendants' use of the OLD NAVY mark on the Old Navy T-Shirts is evidence
of good faith. *See, e.g., EMI Catalogue*, 228 F.3d at 67; *Cosmetically Sealed*, 125 F.3d at 30;
*Dessert Beauty*, 568 F. Supp. 2d at 424.

In sum, here is no genuine issue of material fact as to Defendants' fair use of the terms
"Lower East Side" and "LES," and summary judgment should be awarded to Defendants.

## CONCLUSION

For the reasons stated above, no reasonable juror could conclude that Defendants are
liable under any of Plaintiff's claims. Therefore, Defendants respectfully submit that summary
judgment should be entered in their favor on all of Plaintiff's claims.

Dated: March 19, 2012          FROSS ZELNICK LEHRMAN & ZISSU, P.C.
       New York, New York

                               By: _____
                                   James D. Weinberger (*jweinberger@frosszelnick.com*)
                                   Anna P. Leipsic (*aleipsic@frosszelnick.com*)

                               866 United Nations Plaza
                               New York, NY 10017
                               Tel: (212) 813-5900
                               Fax: (212) 813-5901

                               *Counsel for Defendants*