UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

ROBERT G. LOPEZ,

    Plaintiff,

v.

THE GAP INC., GAP INTERNATIONAL SOURCING, INC., OLD NAVY, LLC and OLD NAVY APPAREL, LLC,

    Defendants.

NO. 11 CV 3185 (PAE)

# REPLY MEMORANDUM IN SUPPORT OF DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

## PUBLIC VERSION

James D. Weinberger (*jweinberger@fzlz.com*)
Anna P. Leipsic (*aleipsic@fzlz.com*)
FROSS ZELNICK LEHRMAN & ZISSU, P.C.
866 United Nations Plaza
New York, NY 10017
Tel: (212) 813-5900
Fax: (212) 813-5901

*Counsel for Defendants*

{F1017160.1}

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ............................................................................................... ii
I. Plaintiff's New LES Design Claim Is Without Basis. ............................................1
II. Plaintiff Has Not Come Forward With Evidence Of Secondary Meaning. ............3
    1. Advertising expenditures ...............................................................................4
    2. Consumer studies linking the mark to a source .............................................6
    3. Unsolicited media coverage of the product ...................................................7
    4. Sales success ..................................................................................................8
    5. Attempts to plagiarize the mark .....................................................................9
    6. Length and exclusivity of the mark's use ......................................................9
III. Plaintiff Has Not Produced Sufficient Evidence Of Use In Commerce. ..............10
IV. There Is No Evidence Supporting Likelihood Of Confusion. ..............................11
    Strength of the marks ........................................................................................11
    Similarity of the marks .....................................................................................11
    Bad faith ............................................................................................................12
V. Defendants' Use Of LOWER EAST SIDE And LES Was Fair Use. ...................13
CONCLUSION ..................................................................................................................14

# TABLE OF AUTHORITIES

## CASES

*20th Century Wear, Inc. v. Sanmark-Stardust, Inc.*,
815 F.2d 8 (2d Cir. 1987) ..................................................................................................7

*American Express Co. v. American Express Limousine Service, Ltd.*,
772 F. Supp. 729 (E.D.N.Y. 1991) ..................................................................................12

*Anderson v. Liberty Lobby*,
477 U.S. 242 (1986) .........................................................................................................11

*Black & Decker Corp. v. Dunsford*,
944 F. Supp. 220 (S.D.N.Y. 1996) ....................................................................................7

*Brierly v. Deer Park Union Free School District*,
359 F. Supp. 2d 275 (E.D.N.Y. 2005) ...............................................................................4

*Brown v. Magistro*,
10-CV-3705(CS), 2011 WL 6399514 (S.D.N.Y. Dec. 20, 2011) .....................................2

*Car-Freshner Corp. v. S.C. Johnson & Son, Inc.*,
70 F.3d 267 (2d Cir. 1995) ..............................................................................................13

*Centaur Communications, Ltd. v. A/S/M/ Communications, Inc.*,
830 F.2d 1217 (2d Cir. 1987) ....................................................................................passim

*Coach Leatherware Co. v. AnnTaylor, Inc.*,
933 F.2d 162 (2d Cir. 1991) ............................................................................................13

*Deer Park Spring Water, Inc. v. Appalachian Mountain Spring Water Co.*,
762 F. Supp. 62 (S.D.N.Y. 1991) ....................................................................................14

*Dessert Beauty, Inc. v. Fox*,
568 F. Supp. 2d 416 (S.D.N.Y. 2008), *aff'd*, 329 F. App'x 333 (2d Cir. 2009) ..............13

*Farricker v. Penson Development, Inc.*,
07-CV-11191(PKC), 2011 WL 6412512 (S.D.N.Y. Dec. 9, 2011) ..............................2, 5

*GTFM, Inc. v. Solid Clothing, Inc.*,
215 F. Supp. 2d 273 (S.D.N.Y. 2002) ...............................................................................6

*Housing & Services, Inc. v. Minton*,
97-C 1997 WL 349949 (S.D.N.Y. June 24, 1997) .........................................................10

*ITC Ltd. v. Punchgini, Inc.*,
482 F.3d 135 (2d Cir. 2007) ..............................................................................................2

*Jeffreys v. City of New York*,
    426 F.3d 549 (2d Cir. 2005) ..................................................................................*passim*

*Jorgensen v. Epic/Sony Records*,
    351 F.3d 46 (2d Cir. 2003) ..............................................................................................13

*Katz v. Adecco USA, Inc.*,
    11-CV-2540(HB), 2011 WL 2436670 (S.D.N.Y. June 16, 2011)....................................13

*Louis Vuitton Malletier v. Burlington Coat Factory Warehouse Corp.*,
    426 F.3d 532 (2d Cir. 2005) ............................................................................................12

*Magesty Sec. Corp. v. U.S. I.R.S.*,
    10-CV-638(ALC), 2012 WL 1425100 (S.D.N.Y. Apr. 24, 2012)

*Major League Baseball Properties, Inc. v. Opening Day Products, Inc.*,
    385 F. Supp. 2d 256 (S.D.N.Y. 2005) .............................................................................10

*Matsushita Electric Industrial Co. v. Zenith Radio Corp.*,
    475 U.S. 574 (1986)....................................................................................................11, 12

*Meiri v. Dacon*,
    759 F.2d 989 (2d Cir. 1985) ............................................................................................13

*Miss Universe, Inc. v. Patricelli*,
    408 F.2d 506 (2d Cir. 1969) ..............................................................................................6

*Momentum Luggage & Leisure Bags v. Jansport, Inc.*,
    00-CV-7909(DLC), 2001 WL 830667 (S.D.N.Y. July 23, 2001),
    *aff'd*, 45 F. App'x 42 (2d Cir. 2002)..................................................................................2

*Mortellito v. Nina of California, Inc.*,
    335 F. Supp. 1288 (S.D.N.Y. 1972) ...............................................................................5, 9

*N.Y.C. Triathlon, L.L.C. v. NYC Triathlon Club, Inc.*,
    704 F. Supp. 2d 305 (S.D.N.Y. 2010) ..........................................................................6, 12

*Professional Offshore Opportunity Fund, Ltd. v. Huifeng Bio-Pharmaceutical
Technology, Inc.*,
    11-CV-4321(LAK), 2012 WL 1314148 (S.D.N.Y. Apr. 17, 2012) .................................13

*Rodgers v. Wright*,
    544 F. Supp. 2d 302 (S.D.N.Y. 2008) .............................................................................12

*Rojas v. Roman Catholic Diocese of Rochester*,
    660 F.3d 98 (2d Cir. 2011) ............................................................................................5, 9

*Saratoga Vichy Spring Co. v. Lehman*,
    625 F.2d 1037 (2d Cir. 1980) ............................................................................................4

<mark>Case 1:11-cv-03185-PAE   Document 51   Filed 05/25/12   Page 5 of 19</mark>

*Star Industries, Inc. v. Bacardi & Co. Ltd.*,
    412 F.3d 373 (2d Cir. 2005) ............................................................................................... 2

*Stern's Miracle-Gro Products, Inc. v. Sharks Products, Inc.*,
    823 F. Supp. 1077 (S.D.N.Y. 1993) .................................................................................. 6

*T. Anthony, Ltd. v. Malletier*,
    93-CV-6900(KC), 1993 WL 659682 (S.D.N.Y. Nov. 24, 1993) ....................................... 9

*Thompson Medical Co. v. Pfizer Inc.*,
    753 F.2d 208 (2d Cir. 1985) ............................................................................................... 4

## RULE

Fed. R. Evid. 201(b) ................................................................................................................... 4

Plaintiff Robert G. Lopez's ("Plaintiff") opposition strains to paint him as a small businessman working to build his brand. Of course, the opposition also strives to conceal the other side of the coin, namely, that Plaintiff, a full-time paralegal with a side business selling clothing, is a serial litigator who has over the past several years filed six lawsuits against numerous companies in this Court over his alleged trademarks, ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓. But the Court need not pass judgment on Plaintiff's business practices in order to decide defendants The Gap, Inc., Gap International Sourcing, Inc., Old Navy, LLC and Old Navy (Apparel), LLC's ("Defendants") motion for summary judgment seeking dismissal of Plaintiff's claims. Rather, the Court need only examine the record, which is completely devoid of the kind of concrete evidence required to establish Plaintiff's case and which he was obligated to bring to the Court's attention in order to avoid dismissal. Rather than meet this standard, Plaintiff has come forward only with attorney argument that is misleading in law and fact, in the hope that "metaphysical doubt" will substitute for the cold, hard facts. As the U.S. Supreme Court has held, it does not. Defendants' motion should therefore be granted.

### I. Plaintiff's New LES Design Claim Is Without Basis.

Perhaps with the understanding that his case is in trouble, Plaintiff in his summary judgment opposition asserts – for the first time – trademark rights in a design consisting of the intertwined letters LES with a star (the "LES Design") and alleges infringement based thereon. (Plaintiff's Opposition Brief. (Dkt. 44; "Opp. Br.") at 4, 7-8; Declaration of Robert G. Lopez (Dkt. 45; "Lopez Dec.") ¶ 10.) Plaintiff did not plead such a claim in his Complaint or Amended Complaint (Dkt. 1 & 13), and explicitly *disavowed* any trademark rights or claims based on the LES Design in discovery.[1] As a party may not assert new claims in opposition to summary

---

[1] *See* Plaintiff's Objections and Responses to Defendants' Second Set of Interrogatories, Ex. A to the Declaration of Anna Leipsic ("Leipsic Dec."), at 4, No. 12 ("Plaintiff . . . asserts that the mark LES is not the subject of this lawsuit . . . ."); Defendants' Second Set of Interrogatories, Leipsic Dec. Ex. B. *See also* Transcript of Deposition of Plaintiff, Jan. 10, 2012 ("Tr."), Ex. 1 to the Declaration of Nivritha Ketty (Dkt. 47; "Ketty Dec."), at 305:6-14: "Q. . . . In your response to interrogatory No. 12 . . . you state that the mark LES is not the subject of this lawsuit, so your inquiry is irrelevant to the present case. Is that what you said? A. Yeah, that is what I said. Q. So

judgment, the Court should disregard Plaintiff's allegations regarding asserted rights in the LES Design. *See, e.g., Brown v. Magistro*, 10-CV-3705(CS), 2011 WL 6399514, at *3 (S.D.N.Y. Dec. 20, 2011) ("[I]t is well settled that a Court should not on summary judgment consider factual allegations and legal theories not raised in the complaint."); *Farricker v. Penson Dev., Inc.*, 07-CV-11191(PKC), 2011 WL 6412512, at *6 (S.D.N.Y. Dec. 9, 2011).

Even if the Court allowed this new, previously disavowed claim to be heard, Plaintiff has not presented a genuine issue of material fact in dispute. Plaintiff has no evidence that he developed trademark rights in the unregistered design prior to Defendants' alleged infringement, which is an essential element of the claim. *See ITC Ltd. v. Punchgini, Inc.*, 482 F.3d 135, 154 (2d Cir. 2007) (plaintiff without federal trademark registration must prove sufficient use to establish priority). Plaintiff claims that he first used the LES Design on products on December 15, 2010. (Lopez Dec. ¶ 11.) Defendants first offered the allegedly infringing t-shirt (the "Old Navy Men's T-Shirt") for sale just one month later, in January 2011. (Pl.'s Responses to Defs.' Statement of Undisputed Facts (Dkt. 43; "Pl.'s 56.1 Statement") ¶ 70.) There is no evidence of sales of products bearing the LES Design during the one month between Plaintiff's adoption of the design and Defendants' introduction of the allegedly infringing design. Therefore, Plaintiff cannot meet his burden of proof and no reasonable jury could find that Plaintiff had established priority of use of the LES Design before Defendants' first offering of the allegedly infringing t-shirt. *See, e.g., Gameologist Grp., L.L.C. v. Scientific Games Int'l, Inc.*, 09-CV-6261(JGK), 2011 WL 5075224, at *8-9 (S.D.N.Y. Oct. 25, 2011) (four documented sales plus undocumented alleged sales of approximately 250 units to retailers were insufficient to establish trademark rights); *Momentum Luggage & Leisure Bags v. Jansport, Inc.*, 00-CV-7909(DLC), 2001 WL 830667, at *7 (S.D.N.Y. July 23, 2001), *aff'd*, 45 F. App'x 42 (2d Cir. 2002) (sales of $3,000 over two years insufficient).[2]

---

LES is not the subject of this case? A. No, it's not." Further, the Court dismissed Plaintiff's copyright infringement claim based on the LES Design with prejudice. (Dkt. 26.)

[2] Nor is there evidence in the record to support Plaintiff's claim that the LES Design is inherently distinctive and protectable without secondary meaning. In *Star Industries, Inc. v. Bacardi & Co.*

Even if Plaintiff had trademark rights in the LES Design, there is no evidence to support likelihood of confusion. The allegedly infringing design in the Old Navy Men's T-Shirt and the LES Design are not visually similar. The LES Design presents the letters as a single, interconnected image with a star. In contrast, the letters on the Old Navy Men's T-Shirt are overlapping in a style common to many well-known athletic franchises. (*Compare* Old Navy Men's T-Shirt to products shown in Ketty Dec. Ex. 2 at 10-12, 14-17.) Plaintiff himself testified that the two designs are different, including in terms of font, presentation of letters, graininess of typeface and the star element. (Tr. at 269:6-277:9.) Moreover, Plaintiff conceded that the Old Navy Men's T-Shirt was created prior to any acquisition by him of any right to the LES Design, removing any conceivable possibility of Old Navy's bad faith in adopting the design in the Old Navy Men's T-Shirt. (Leipsic Dec. Ex. C.) As to the other likelihood of confusion factors, as discussed in Section IV, below, the relevant evidence in the record all favors Defendants.

## II. Plaintiff Has Not Come Forward With Evidence Of Secondary Meaning.

Once the Court disregards Plaintiff's sham LES Design trademark claim, all that is left is LOWER EAST SIDE and LES NYC, which Plaintiff admits are geographically descriptive, requiring him to prove secondary meaning. (Opp. Br. at 8.)[3] Plaintiff's effort falls woefully short.

"A mark acquires secondary meaning when 'it [is] shown that the *primary* significance of the term in the minds of the consuming public is not the product but the producer.'" *Centaur Commc'ns, Ltd. v. A/S/M/ Commc'ns, Inc.*, 830 F.2d 1217, 1221 (2d Cir. 1987). Plaintiff does not dispute that the dates by which he must show secondary meaning are December 28, 2009, in

---

*Ltd.*, 412 F.3d 373 (2d Cir. 2005), cited by Plaintiff, the Court recognized that "'[c]ommon basic shapes' or letters are, as a matter of law, not inherently distinctive." *Id.* at 382 (citations omitted). And while "stylized shapes or letters may qualify [as inherently distinctive], provided the design is not commonplace but rather unique or unusual in the relevant market," *id.*, it is common to display the letters of an acronym in an overlapping fashion, as shown in an exhibit submitted by Plaintiff (Ketty Dec. Ex. 2 at 10-12, 14-17), and the use of a star, a "[c]ommon basic shape," is similarly unoriginal, *Star Indus.*, 512 F.3d at 382.

[3] As explained in note 2, above, Plaintiff must also show that his newly-alleged mark, the LES Design, has secondary meaning because it, too, is geographically descriptive and not inherently distinctive, which Plaintiff has also failed to do.

order to bring an infringement claim against the Defendants' women's t-shirt ("Old Navy Women's T-Shirt"), and January 2011, in order to bring an infringement claim against the Old Navy Men's T-Shirt. (Opp. Br. at 10); *see Saratoga Vichy Spring Co. v. Lehman*, 625 F.2d 1037, 1043 (2d Cir. 1980).[4] Moreover, in his opposition Plaintiff for the first time limits his claim of secondary meaning to the area of "New York," (Opp. Br. at 9-10), thereby surrendering any claim to injunctive relief for the rest of the United States. Within New York – it is unclear whether Plaintiff asserts secondary meaning in New York State, New York City, or only Manhattan, and such imprecision should be fatal to his claims – Plaintiff must show that a "substantial segment of the relevant group of consumers made the requisite association between the product and the producer," by, roughly, the end of 2009 or the end of 2010. *See Centaur*, 830 F.2d at 1222. U.S. Census Bureau data[5] shows that, as of 2009, more than 19 million people resided in New York state, more than 8 million in New York City and more than 1.5 million in New York County (*i.e.*, Manhattan).

Even when geographically limited, Plaintiff's evidence falls far short of meeting the "vigorous . . . requirements" to show secondary meaning. *Jeffreys v. City of New York*, 426 F.3d 549, 554 (2d Cir. 2005); *see also id.* ("hard evidence" required to establish genuine issue of material fact); *Brierly v. Deer Park Union Free Sch. Dist.*, 359 F. Supp. 2d 275, 294 (E.D.N.Y. 2005). In fact, the opposition papers are replete with mischaracterizations of such "evidence" and the relevant factors: (1) advertising expenditures, (2) consumer studies, (3) unsolicited media coverage, (4) sales success, (5) attempts to plagiarize the mark, and (6) length and exclusivity of the mark's use. *See Thompson Med. Co. v. Pfizer Inc.*, 753 F.2d 208, 217 (2d Cir. 1985).

*(1) Advertising expenditures*: Plaintiff has submitted *no* hard evidence of advertising expenditures prior to 2011, when the Old Navy Men's T-Shirt was first sold. In his deposition,

---

[4] The Old Navy Men's T-Shirt is shown in Ex. A, and the Old Navy Women's T-Shirt in Ex. B, to the Declaration of Michelle DeMartini (Dkt. 37; "DeMartini Dec.").

[5] The Court may take judicial notice of U.S. Census Data, *see* Fed. R. Evid. 201(b), available at www.google.com/publicdata/explore?ds=uspopulation.

Plaintiff estimated that starting in 2006, when he began distributing fliers and stickers, he spent "potentially ▓▓▓▓▓▓▓▓▓▓, you know, in that range per year." (Tr. 119:3-7.) The remainder of Plaintiff's advertising "evidence" consists of conclusory and contradicting statements. For example, Plaintiff states in his declaration that he began distributing fliers in the Lower East Side in 1999 (Lopez Dec. ¶ 25), but previously testified that he "was not printing fliers, or stickers, or anything of that nature" in 1999, that he did not start printing fliers "until at least 2006," and that prior to 2006 the majority of his advertising was by "word of mouth." (Tr. 119:23-120:6.)[6] *See Rojas v. Roman Catholic Diocese of Rochester*, 660 F.3d 98, 103-05 (2d Cir. 2011) (where plaintiff "changed key aspects of her prior version of events, set forth in . . . testimony . . . in an attempt to defeat [defendant's] summary judgment motion," district court need not credit statements made in opposition to summary judgment); *Jeffreys*, 426 F.3d at 554 (same); *Farricker*, 2011 WL 6412512, at *6 (same). Plaintiff's testimony should not be credited.

Even if the testimony were sufficient to meet Plaintiff's burden, which it is not, Plaintiff has cited no case that supports a finding of secondary meaning based on such scant advertising evidence. In *Mortellito v. Nina of California, Inc.*, 335 F. Supp. 1288 (S.D.N.Y. 1972), Plaintiff's principal case, secondary meaning was found where the plaintiff advertised in several well-known magazines, including *House & Garden* and *Town & Country*, on a radio station and in a newspaper, and was written about in well-known publications, including *Life* and *Elle* magazines, the *New York Times* and the *Chicago Daily News*. *Id.* at 1290-91. The other cases on

---

[6] Other than his fliers and stickers, Plaintiff's only pre-2011 evidence of advertising *at all* consists of two magazine advertisements (Lopez Dec. Exs. 19-20), an alleged magazine advertisement that he has not produced (*id.* ¶ 31), photographs of several wall murals (*id.* Exs. 13-14), and his own unsubstantiated statements that he and his acquaintances regularly wear his apparel and that he promoted his products at one undocumented event in the East River Park in Manhattan. (Lopez Dec. ¶¶ 26, 28, 32.) However, there is no evidence in the record that could lead a reasonable jury to conclude that these limited activities have caused a substantial number of consumers in New York to associate his products with a single source. *See Centaur*, 830 F.2d at 1221 ("Although the mark owner strives to create a secondary meaning for its product, it is the consuming public which . . . determines whether that effort has succeeded."). Any allegations of advertising in 2011, *i.e.*, the launch of the website at www.lesclothing.com, a Facebook page and a Twitter account, are irrelevant because they post-date the latest date by which Plaintiff must show secondary meaning, January 2011. (*See* Lopez Dec. ¶¶ 21, 33-34.)

which Plaintiff relies are also distinguishable. *See N.Y.C. Triathlon, L.L.C. v. NYC Triathlon Club, Inc.*, 704 F. Supp. 2d 305, 315-16 (S.D.N.Y. 2010) (secondary meaning found where NYC TRIATHLON race had 5,600 competitors, 250,000 spectators, many well-known sponsors and "vast media coverage"); *Miss Universe, Inc. v. Patricelli*, 408 F.2d 506, 507-09 (2d Cir. 1969) (MISS U.S.A. and MISS UNITED STATES OF AMERICA "enjoyed wide publicity and extensive coverage in newspapers"); *Centaur*, 830 F.2d at 1222-23 (secondary meaning found for the publication title, MARKETING WEEK, where plaintiff spent $10,000 in direct mail advertising to 26,000 subscribers, mailed brochures to top 100 advertising agencies, made semiannual sales presentations to advertising agencies and sponsored conferences). Plaintiff's advertising evidence falls woefully short of the "vigorous evidentiary requirements," *Jeffreys*, 426 F.3d at 554, to prove secondary meaning.

**(2) *Consumer studies linking the mark to a source:*** Plaintiff has failed to submit any study showing that consumers associate his alleged marks with a single source. He claims that he does not have the funds to pay for a survey, which his counsel states would cost approximately $25,000. (Lopez Dec. ¶ 53; Ketty Dec. ¶ 5.) However, in 2011 Plaintiff made at least ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ (Pl.'s 56.1 Statement ¶ 61), he has worked full-time as a paralegal since 2000 (*id.* ¶ 3), and he has not paid for legal services in connection with this litigation. (Lopez Dec. ¶ 4.) Therefore, Plaintiff's claimed lack of funds, which flies in the face of the evidence, cannot excuse his failure to produce a consumer study.

Plaintiff cites several cases in which secondary meaning was found in the absence of consumer testimony or a study, but each case presented substantial evidence on the other factors, which is not present here. *See, e.g., GTFM, Inc. v. Solid Clothing, Inc.*, 215 F. Supp. 2d 273, 294 (S.D.N.Y. 2002) (over $8 million in advertising expenditures, sales of over 3 million garments, revenues of nearly $87 million, strong evidence of copying, widespread unsolicited media coverage); *Stern's Miracle–Gro Prods., Inc. v. Sharks Prods., Inc.*, 823 F. Supp. 1077, 1086 (S.D.N.Y. 1993) (exclusive use for over 40 years, $12-$14 million in advertising expenditures per year, sales in 40,000 retail stores, largest business in the industry, widespread unsolicited

media attention). Therefore, the absence of any consumer testimony or a study must bear against Plaintiff. *See, e.g., 20th Century Wear, Inc. v. Sanmark-Stardust, Inc.*, 815 F.2d 8, 10 (2d Cir. 1987); *Black & Decker Corp. v. Dunsford*, 944 F. Supp. 220, 227 (S.D.N.Y. 1996).

***(3) Unsolicited media coverage of the product:*** Plaintiff notes a few, isolated instances of unsolicited media coverage, but nothing in the record suggests that they resulted in the required consumer recognition of his alleged marks in order to be probative of secondary meaning. For example, Plaintiff admitted that the issue of *Hip Hop Weekly* magazine showing an artist wearing his apparel – which was not produced in discovery – did not actually mention him or his business. (Lopez Dec. ¶ 36; Tr. at 122:21-123:6.) Nor does the blog showing a photograph of a musician wearing Plaintiff's t-shirt. (Lopez Dec. Ex. 28.) Further, Plaintiff's characterization of the "Pepsi/Yahoo" or "PepsiSmash" video in which a musician wore Plaintiff's apparel is misleading. (*Id.* ¶ 37, Ex. 27; Opp. Br. at 16.) This was not an advertisement for Yahoo or Pepsi, but rather a musician's self-made video distributed through a service sponsored by those companies. (*See* Leipsic Dec. Ex. D.) And, again, there was no mention of him or his business. Most importantly, Plaintiff has no evidence, such as circulation or number of views, suggesting that this *de minimis* "media coverage" has caused even a single consumer, let alone a substantial segment of consumers, to associate his alleged marks with a single source.

Plaintiff also claims that his alleged marks have received "publicity" because a handful of musicians and DJs wore his apparel during performances. (Lopez Dec. ¶¶ 35, 39.) In total, he has submitted just two photographs of artists wearing his apparel before 2011, which he claims to have been unsolicited (*Id.* ¶ 35, Exs. 23, 24), and seven photographs showing artists wearing his apparel at his request before 2011. (*Id.* ¶ 39, Exs. 31-33, 32-33, 35-38.)[7] Plaintiff does not claim, and there is no evidence, that any of these photographs were published or made available to

---

[7] Defendants were unable to question Plaintiff about these photographs at his deposition because they were produced long after the discovery cutoff on January 10, 2012, not until 4 p.m. the day before Defendants' summary judgment motion was due, despite the fact that they were responsive to discovery requests. (Leipsic Dec. ¶ 6, Ex. E.) They should therefore be disregarded.

{F1017160.1}                                    7

anyone other than himself, how many people saw the artists wearing the apparel, or that anyone connected the apparel to him or his business, and has submitted no evidence that would suggest that any of these artists are well known or did anything to promote Plaintiff's business. Plaintiff effectively has no evidence to support any consideration of this factor in his favor.

**(4) *Sales success:*** Plaintiff produced an unverifiable tax schedule, with no accompanying return, for 2010. (Declaration of James Weinberger (Dkt. 38; "Weinberger Dec.") Ex. H.) ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇ (*Id.*) Plaintiff does not dispute that the only other documented evidence of pre-2011 sales amounts to ▇▇▇. (Pl.'s 56.1 Statement ¶ 30.) Rather, Plaintiff relies entirely on his unsubstantiated testimony that he had "▇▇▇▇▇▇▇▇▇▇▇ of sales a year" prior to 2011 (Opp. Br. at 14.) He further argues that the Court should accept his testimony because it is consistent with his handwritten – and unverifiable – notes which purport to show more than ▇▇▇ in sales in *February 2012* (Lopez Dec. ¶ 24; Weinberger Dec. Ex. G.)[8] Apart from the fact that sales subsequent to January 2011 are irrelevant to secondary meaning, Plaintiff may not rely on self-serving testimony to defeat summary judgment, particularly where the testimony is contradicted by the evidence. *See Magesty Sec. Corp. v. U.S. I.R.S.*, 10-CV-638(ALC), 2012 WL 1425100, at *1 n.3 (S.D.N.Y. Apr. 24, 2012) (where income tax returns contradicted plaintiff's claims, court held that "[s]ince Plaintiff offers no 'hard evidence for its position and relies on conclusory assertions that are contradicted in the record, the Court need not credit Plaintiff's assertions in opposing summary judgment"); *Jeffreys*, 426 F.3d at 551 (no genuine issue of material fact

---

[8] Plaintiff's claim of having "opened" a "retail store" at 43 Clinton Street in Manhattan in February 2012 (Lopez Dec. ¶¶ 23, 32) is false and irrelevant in any event. First, the 43 Clinton Street address is and has been occupied by the boutique, Coat of Arms, one of several third parties Plaintiff has sued for alleged trademark infringement. (*See* Weinberger Dec. Ex. R (Oct. 2011 article reporting that "the litigious Lopez" sued "Lower East Side boutique Coat of Arms" located at "43 Clinton Street").) Plaintiff dismissed his lawsuit against Coat of Arms on January 25, 2012 (Weinberger Dec. Ex. O), and the next month began selling his own products *inside* the Coat of Arms boutique. (*See* Leipsic Dec. Ex. F (Feb. 2012 article reporting that "Coat of Arms at 43 Clinton Street . . . reached a co-op agreement" whereby Plaintiff shares its retail space). Second, that shared retail space should not factor into the secondary meaning analysis because it was established more than a year *after* the latest relevant date, January 2011, for purposes of establishing secondary meaning.

where party relies "almost exclusively on his own testimony"); *Rojas*, 660 F.3d at 100 (same).

Even if Plaintiff did achieve sales of ▮▮▮▮▮▮▮▮▮▮ per year from 2007 to 2010, as he claimed at his deposition, this would be insufficient to show secondary meaning. Plaintiff relies on *Mortellito* – a case decided in 1972 – to argue that the Lanham Act "protects small businesses" (Opp. Br. 15), but the "small business" plaintiff in that case achieved sales of $184,000 in one year *forty years ago*. 335 F. Supp. at 1290-91. Plaintiff then attempts to distinguish the high sales in *Mortellito* on the basis that Plaintiff's low sales are "countered" by Plaintiff's alleged 15 years in business. (Opp. Br. 15 n.3.) This is disingenuous: not only is there no evidence that shows when Plaintiff started selling his products, but the plaintiff in *Mortellito* had sold products under her mark for a virtually identical time period with vastly superior sales and produced other probative evidence of secondary meaning. 335 F. Supp. at 1290-91.

***(5) Attempts to plagiarize the mark:*** Evidence of copying is probative of secondary meaning because the copier's motivation is presumably to capitalize on consumer recognition of the copied mark. *See, e.g., T. Anthony, Ltd. v. Malletier*, 93-CV-6900(KC), 1993 WL 659682, at *3 (S.D.N.Y. Nov. 24, 1993). Here, although there is evidence that numerous third parties have used "Lower East Side," "LES" and "LES NYC" as geographically descriptive terms (Pl.'s 56.1 Statement ¶ 50; Weinberger Dec. Exs. S-V), Plaintiff has submitted no evidence that any third party has *copied* – or even was aware of – his alleged marks. In addition, it is Plaintiff's burden to produce evidence of plagiarism; Plaintiff's assertion that Defendants must show that the third parties had a "credible explanation" for their use of these geographic terms finds no support in the facts or law. (Opp. Br. 15-16); *cf. Centaur*, 830 F.2d at 1224 (finding intentional copying of MARKETING WEEK where defendant used the title ADWEEK'S MARKETING WEEK, the parties had previously discussed a joint venture, and the defendant's executive vice-president and principal stockholder had copies of plaintiff's MARKETING WEEK publication in his office). Therefore, this factor does not favor a finding of secondary meaning.

***(6) Length and exclusivity of the mark's use:*** The evidence in the record of third-party use of "Lower East Side, "LES" and "LES NYC" shows that the terms are highly diluted, further

weakening any claim that Plaintiff's alleged marks are capable of identifying a single source. Plaintiff's claimed ignorance of such uses (Opp. Br. at 11) does not change the fact that they exist. As for his alleged "policing," Plaintiff concedes, as he must, that ████████████ ████████████████████████████████████████████████████. (Pl.'s 56.1 Statement ¶ 58; Lopez Dec. ¶ 46, Ex. 44.) ████████████████████████
████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████
████████████████████████████████████████.

A review of the *evidence in the record*, as opposed to counsel's pie-in-the-sky arguments, demonstrates that there is no genuine issue of material fact that Plaintiff's alleged marks have not acquired secondary meaning. No decision of this Court, or any court, for that matter, has found secondary meaning on such a thin record, even in a limited geographical area. Accordingly, because Plaintiff's alleged marks are geographically descriptive without evidence of secondary meaning and thus are not protectable under the Lanham Act, no reasonable jury could find in Plaintiff's favor and summary judgment must be granted to Defendants.

### III. Plaintiff Has Not Produced Sufficient Evidence Of Use In Commerce.

The evidence also fails to show that products bearing Plaintiff's alleged marks gained sufficient market penetration prior to December 2009 or January 2011 for him to have developed any trademark rights. *See, e.g., Major League Baseball Props., Inc. v. Opening Day Prods., Inc.*, 385 F. Supp. 2d 256, 266 (S.D.N.Y. 2005); *Hous. & Servs., Inc. v. Minton*, 97-CV-2725(SHS), 1997 WL 349949, at *4 (S.D.N.Y. June 24, 1997). As set forth above (*see* Sections II(4) and (6)), not only has Plaintiff abandoned his claim to nationwide rights, but he also has failed to meet his burden to come forward with "hard evidence" showing sufficient use of his alleged marks in commerce in any defined area within New York. Instead, he relies on unsubstantiated

and speculative testimony that is contradicted by the record. *See Jeffreys*, 426 F.3d at 554 (plaintiff may not defeat summary judgment with "conclusory allegations" and "unsubstantiated speculation") (citation omitted); *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986) (plaintiff must present "specific facts"); *Anderson v. Liberty Lobby*, 477 U.S. 242, 249-50 (1986) (evidence must not be "merely colorable"; "[t]he mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient"). Plaintiff's failure of proof is fatal to his claim, and summary judgment should therefore be granted for Defendants.

## IV. There Is No Evidence Supporting Likelihood Of Confusion.

Even if the Court finds that Plaintiff's alleged marks are protectable, Plaintiff has come forward with no evidence that could lead a reasonable jury to conclude that consumers are likely to be confused. Plaintiff's focus on post-purchase confusion (*see* Opp. Br. at 20, 22-23) makes no difference to the analysis. As set forth in Defendants' moving brief, Plaintiff has not produced evidence supporting a finding in his favor on any of the eight *Polaroid* factors, regardless of timing. (Defendants' Moving Brief (Dkt. 36; "Defs.' Br.") at 18-23.) For the majority of factors, Defendants refer the Court to their moving brief. *Id.* However several mischaracterizations of law and fact in Plaintiff's opposition papers merit clarification here.

***Strength of the marks:*** Plaintiff's contention that descriptive marks with secondary meaning are necessarily "strong" is contrary to the case law. As discussed extensively above, a descriptive term must have secondary meaning in order to be protectable; its relative strength for purposes of determining whether there is a likelihood of confusion is a separate analysis. For example, in *Centaur*, the court observed that although MARKETING WEEK had acquired secondary meaning, "as a descriptive mark [it] is, by definition, somewhat weak," but concluded that the plaintiff's extensive promotional activities had caused the mark to achieve "relative – if not great – strength in its market context." 830 F.2d at 1226. Here, Plaintiff's alleged marks are admittedly descriptive, and Plaintiff has not engaged in any significant promotional activities, or had sufficient sales, to raise their commercial strength above the level of "weak." *See* Section II.

***Similarity of the marks:*** In his opposing papers, Plaintiff ignores the numerous

differences between Plaintiff's alleged marks and the Old Navy t-shirts described in Defendants' brief. (*See* Defs.' Br. at 20.) For example, although Plaintiff mischaracterizes Defendants' use of overlapping letters on the Old Navy Men's T-Shirt as "mimic[king] Lopez's LES Mark" (Opp. Br. at 21), the letters plainly overlap in different ways, Plaintiff's font is sans serif while Defendants' font is serif, and the Old Navy Men's T-Shirt displays more additional words and designs than the products held to be infringing in the cases cited by Plaintiff. *See Triathlon*, 704 F. Supp. 2d at 317; *Rodgers v. Wright*, 544 F. Supp. 2d 302, 311 (S.D.N.Y. 2008); *Am. Express Co. v. Am. Express Limousine Serv., Ltd.*, 772 F. Supp. 729, 733 (E.D.N.Y. 1991). The "overall impression" of the Old Navy designs, which is critically important to the similarity analysis, *Louis Vuitton Malletier v. Burlington Coat Factory Warehouse Corp.*, 426 F.3d 532, 537 (2d Cir. 2005), is different from those of Plaintiff.[9]

**Bad faith**: In a half-hearted attempt to save his case, Plaintiff includes in his brief a request for discovery regarding Defendants' intent in adopting the designs on the Old Navy T-Shirts (Opp. Br. at 26-27), arguing that "Defendants have not provided discovery regarding design, creation, or adoption of the marks on the infringing T-shirts." (*Id.* at 25.) This is wrong, and Plaintiff knows it: Defendants produced *all* records relating to the design, creation and adoption of the designs on the t-shirts in a timely manner, and counsel *admits as such in her declaration*. (*See* Ketty Dec. ¶ 18 ("Defendants responded that they did not have any non-privileged documents to produce . . . ."). Plaintiff cannot have discovery reopened by claiming he needs documents that do not exist.[10] Nor can he avoid summary judgment in the hope that something might be discovered. *See Jeffreys*, 426 F.3d at 554; *Matsushita*, 475 U.S. at 586. Further, nothing in the record suggests that Defendants' designs were created or marketed in a bad faith attempt to trade on the goodwill of Plaintiff. The Old Navy products bear no indicia of

---

[9] Moreover, there is no evidence to support counsel's speculative argument that because Old Navy sells some t-shirts bearing third-party trademarks under license, consumers will believe that *any* Old Navy t-shirt bears a third-party trademark. (Opp. Br. at 22.)

[10] The lack of evidence of bad faith in the record negates Plaintiff's attempt to maintain his state law unfair competition claim. (Opp. Br. at 7 n.1.)

Plaintiff and include the famous OLD NAVY brand name. As the Second Circuit has held, the "summary judgment rule would be rendered sterile . . . if the mere incantation of intent or state of mind would operate as a talisman to defeat an otherwise valid motion." *Meiri v. Dacon*, 759 F.2d 989, 998 (2d Cir. 1985).[11]

Accordingly, for these reasons and those set forth in their moving brief, the Court should grant Defendants' summary judgment on Plaintiff's likelihood of confusion claims.

## V.  Defendants' Use Of LOWER EAST SIDE And LES Was Fair Use.

Finally, Plaintiff has identified no disputed issue of fact concerning fair use. First, there is no requirement that Old Navy's goods have any association with the Lower East Side. A term is used fairly where it is descriptive even if it is only symbolic; the term need not describe the product literally. *Cf. Dessert Beauty, Inc. v. Fox*, 568 F. Supp. 2d 416, 424 (S.D.N.Y. 2008), *aff'd*, 329 F. App'x 333 (2d Cir. 2009) (use of the term "love potion" in connection with fragrance was fair use, even though fragrance product was not literally a "love potion"). Second, Plaintiff again ignores the fact that Defendants use the OLD NAVY house mark on every t-shirt, which shows that Defendants do not use the geographic terms as a mark, *i.e.*, indicators of the source of the goods, and Plaintiff has admitted as much, *see* Tr. at 107-09. *See, e.g., Car-Freshner Corp. v. S.C. Johnson & Son, Inc.*, 70 F.3d 267, 270 (2d Cir. 1995) (defendant's use did not constitute "use as a mark" when product "come[s] in boxes prominently bearing

---

[11] Allowing additional discovery would be prejudicial to Defendants in terms of further delay and the burden of producing a discovery witness at this late stage. Nor has Plaintiff demonstrated any justification for his failure to seek the discovery he now requests. *See, e.g., Prof'l Offshore Opportunity Fund, Ltd. v. Huifeng Bio-Pharm. Tech., Inc.*, 11-CV-4321(LAK), 2012 WL 1314148, at *4 (S.D.N.Y. Apr. 17, 2012) ("Rule 56(d) requires far more than simply a claim that the non-moving party has not had or wants more discovery."). Plaintiff had the opportunity to depose Defendants' witnesses, and he has no excuse – including his *pro se* status, *see, e.g., Jorgensen v. Epic/Sony Records*, 351 F.3d 46, 50 (2d Cir. 2003) – for not taking any. The cases Plaintiff cites are distinguishable:.*see Katz v. Adecco USA, Inc.*, 11-CV-2540(HB), 2011 WL 2436670, at *2 (S.D.N.Y. June 16, 2011) (request for more discovery granted where summary judgment filed prior to end of discovery period before plaintiff had opportunity to conduct discovery); *Coach Leatherware Co. v. AnnTaylor, Inc.*, 933 F.2d 162, 167 (2d Cir. 1991) (permitting defendant to take additional discovery in "unusual circumstance" where court, *sua sponte*, granted summary judgment for plaintiff, defendant had no opportunity to defend against claims, and discovery period had not closed). Plaintiff's 56(d) request should be denied.

[defendant's] trademark [and] corporate logo").[12] Third, as set forth in Section IV, there is no evidence of any bad faith on the part of Defendants. (*See also* Defs.' Br. at 24-25.) Accordingly, Plaintiff's infringement claims should be dismissed on this separate ground.

## CONCLUSION

Plaintiff's opposition is littered with hollow legal argument based on a nonexistent record. As Plaintiff has failed to come forward with evidence demonstrating a genuine issue of material fact on any of his claims and no reasonable jury could find for Plaintiff, summary judgment should be granted to Defendants.

Dated: May 25, 2012  
       New York, New York

FROSS ZELNICK LEHRMAN & ZISSU, P.C.

By: _____  
James D. Weinberger (*jweinberger@frosszelnick.com*)  
Anna P. Leipsic (*aleipsic@frosszelnick.com*)

866 United Nations Plaza  
New York, NY 10017  
Tel: (212) 813-5900  
Fax: (212) 813-5901

*Counsel for Defendants*

---

[12] *Deer Park Spring Water, Inc. v. Appalachian Mountain Spring Water Co.*, 762 F. Supp. 62, 66-67 (S.D.N.Y. 1991), relied on by Plaintiff, is distinguishable because the consumers at issue in that case were deceived as to the geographic origin of bottled water labeled with an incorrect source. Here, there is no evidence that consumers believe that place names on t-shirts indicate the geographic origin of the goods. Indeed, each Old Navy product is clearly marked as originating from Old Navy. (DeMartini Dec. ¶ 5.)